A91A1643, A91A1644. SEWELL v. OK OIL, INC.; and vice versa.
(417 SE2d 408)

JOHNSON, Judge.

OK Oil, Inc., sued Sewell seeking to enjoin him from violating a restrictive covenant which allegedly encumbered certain real property he had recently purchased. According to the complaint, this covenant "granted and conveyed unto [OK Oil] for thirty years the exclusive right to provide gasoline and diesel fuel for retail sales at the said location. . . ." Sewell counterclaimed, demanding, among other things, that OK Oil be required to remove from the premises any personal property it claimed to own and to furnish him with "the appropriate Environmental Protection Certificates and other certifications relative to said property upon the removal of said personal property as required by the rules and regulations of the Environmental Protection Agencies of the State of Georgia and the United States of America."

The trial judge denied cross motions for summary judgment filed by the parties, whereupon each filed an application for interlocutory appeal, with OK Oil directing its application to the Supreme Court and Sewell directing his to this court. Because the relief sought in the action is equitable in nature, we transferred Sewell's application to the Supreme Court; however, the Supreme Court transferred it back to us, along with OK Oil's application. We then granted both applications.

Sewell had purchased the property at issue from Ms. Patricia Waggoner on August 14, 1990, receiving from her a warranty deed which contained no reference to any restrictive covenant or other en-

cumbrance. Some three years prior to this transaction, on June 8, 1987, Ms. Waggoner had entered into a contract with OK Oil whereby OK Oil had agreed both to furnish petroleum products to the property and to install and maintain tanks, pumps and other equipment necessary to the operation of a self-service retail gasoline outlet, and she had agreed not to market any other company's petroleum products at that location. The contract specified that OK Oil would retain title to the equipment which it supplied to the property, that such equipment would not become part of the realty, that it would have "unlimited access to its equipment at the location to deliver product, read pumps or tanks, etc.," and that it would pay "all state, county or city ad valor[e]m taxes and assessments, general and special, upon its property at the location."

Contemporaneously with the execution of this contract, Waggoner and OK Oil executed a separate document, denominated an "indenture," which contained a legal description of the realty and specified, with reference to that description, as follows: "That [Waggoner], in consideration of the terms, covenants, conditions, and agreements on the part of [OK Oil] that are mentioned, demises and encumbers to [OK Oil], and [OK Oil] acquires rights therein from [Waggoner], to the following property (the demised premises) . . . To have and to hold the premises for the term commending (sic) on the 8th day of June 1987 and ending on the _____ day of September, 2008, or upon the completion of the term as prescribed, upon the terms, covenants and conditions contained in a certain collateral agreement between the parties bearing the same date as this instrument and executed contemporaneously herewith." Although Waggoner's signature on this "indenture" does not appear to have been properly attested (see generally OCGA § 44-5-30), OK Oil recorded it in the county deed records; and it is apparently not disputed that Sewell had actual knowledge of its existence at the time he purchased the property from Waggoner. The issue before us is whether the covenant between OK Oil and Waggoner was purely personal or whether it created an encumbrance which was enforceable against a subsequent purchaser of the property.

The Supreme Court has held that in order for a covenant to run with the land, " 'its performance or nonperformance must affect the nature, quality, or value of the property demised, independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties.' " *Copelan v. Acree Oil Co.,* 249 Ga. 276, 277-278 (290 SE2d 94) (1982), quoting from *Atlanta Consolidated St. R. Co. v. Jackson,* 108 Ga. 634, 638-639 (34 SE 184) (1899). "An agreement restricting the use of real estate not resulting from 'privity of estate' is not a covenant running with the land but a personal obligation of the parties not binding

upon their assignees." *Johnson v. Myers,* 226 Ga. 23 (172 SE2d 421) (1970). The Court indicated in *Johnson,* supra, that for privity of estate to exist, " 'there must first be an interest or estate therein granted, the covenant must relate to the interest or estate granted, and the act to be done must concern the interest created or title conveyed.' " Id. at 26, quoting from *Grant-Jeter Co. v. American Real Estate Co.,* 159 Ga. 80, 83 (125 SE 73) (1924). However, in *Rosen v. Wolff,* 152 Ga. 578, 585-586 (110 SE 877) (1922), the Supreme Court stated: "There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights." Accord *Guerin v. Webster,* 233 Ga. 521 (1) (212 SE2d 352) (1975).

The issue in *Copelan v. Acree Oil Co.,* supra, as in the present case, was whether an exclusive marketing arrangement pertaining to the operation of a gas station constituted a covenant running with the land so as to bind a successor in title. There, a gas station owner had entered into a "lease" agreement with a wholesale distributor of petroleum products wherein he had agreed to continue operating a gas station on the property during the term of the "lease," selling only the petroleum products of the distributor. The property was subsequently sold to another individual, who signed a similar contract with the distributor, and was thereafter purchased by a bank at a foreclosure sale. The bank then sold it to Copelan, warranting title "except as to . . . any claim of leaseholder rights and interests of [the distributor]." The Supreme Court concluded that "no estate for years and no interest in land [had been] created" by the agreement between the distributor and Copelan's predecessor in title because, "though denominated a 'lease' by the parties, [it] convey[ed] no right of occupancy or control by the 'lessee,' but the owner, denominated as 'lessor,' retain[ed] the full enjoyment of the property." Id. 249 Ga. at 278. Without discussing the equitable principles set forth in *Rosen v. Wolff,* supra, the Court held that under these circumstances the agreement could not "be amplified so as to constitute a covenant running with the land" which would operate to bind Copelan as a successor in title. *Copelan,* supra at 278.

In the present case, unlike *Copelan,* the prior property owner did not retain "the full enjoyment of the property" but rather conveyed

to the oil company *both* the right to install and maintain such tanks, pumps and other equipment on the property as were necessary to the operation of a self-service retail gasoline outlet at that location *and* the right of "unlimited access to its equipment at the location to deliver product, read pumps or tanks, etc." We conclude that this was a sufficient "right of occupancy or control" to create a "privity of estate" between the prior property owner and the oil company, thereby rendering the covenant enforceable against a subsequent purchaser of the property acquiring title with notice of its existence. Moreover, under the rationale of *Rosen v. Wolff*, supra, the covenant would appear to be enforceable in equity against Sewell whether it "runs with the land" or not. Accordingly, we hold that the trial court erred in denying OK Oil's motion for summary judgment, though not in denying Sewell's motion for summary judgment.

*Judgments affirmed in part and reversed in part with direction. Carley, P. J., and Beasley, J., concur.*

DECIDED MARCH 18, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Jack F. Witcher, Maryellen S. Mitchell,* for appellant.

*Tisinger, Tisinger, Vance & Greer, J. Thomas Vance, Robert H. Sullivan,* for appellee.