A94A0075. SOUTHEAST TOYOTA DISTRIBUTORS, INC.
v. FELLTON et al.
(440 SE2d 708)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Southeast Toyota Distributors, Inc. (Toyota) initiated an action for declaratory judgment concerning the validity and enforceability of certain covenants purporting to run with and to restrict the use and development of certain land (the property). All previous landowners in the chain of title and the persons who executed the covenant agreements were named as defendants.

After Toyota purchased the property, it acquired actual knowledge of the existence of Agreement I and Agreement II, dated September 28, 1983 and January 10, 1984, respectively, which contained the covenants at issue. Agreement I was executed by appellant's predecessor in title, Richard Tuley Homes, Inc. (Tuley Homes) and four married couples (the neighbors); Agreement II was signed by Tuley Homes and appellees Snarr and Smitherman. Toyota filed a complaint for equitable relief affecting title to land, or for damages, seeking therein a declaration that the agreements were void and unenforceable either against Toyota or any successor-in-title. Toyota thereafter dismissed, without prejudice, the second count of its complaint for damages for breach of warranty of title against defendant Billy L. Watson. Subsequently, Toyota filed a motion for summary judgment but, during the hearing, appellees orally requested the trial court to consider the matter as though a cross-motion for summary judgment had been filed. Toyota agreed to this procedure. The trial court denied Toyota's motion for summary judgment and granted summary judgment in favor of appellees. Final judgment was entered as to certain defendants, concluding that the restrictive covenants contained in Agreement I and Agreement II are valid and binding on the property, run with the land, and are enforceable by appellees, their successors and assigns. Toyota appealed the respective grant and denial of summary judgment to the Georgia Supreme Court

which transferred the appeal to this court.

On July 11, 1983, Tuley Homes became owners of record of the property. On September 28, 1983, Tuley Homes entered Agreement I, containing certain restrictive covenants, with eight of the appellees; this document was not independently recorded. By undated warranty deed duly recorded on October 19, 1983, Tuley Homes conveyed the property to Richard Tuley in his individual capacity; this deed does not mention Agreement I. By undated warranty deed duly recorded on October 19, 1983, Richard Tuley reconveyed the property to Tuley Homes. This deed expressly provides: "This conveyance is subject to the terms and conditions of that certain Agreement dated September 28, 1983, among parties of the second part, Richard Tuley Homes, Inc., and certain individuals therein defined as 'neighbors,' a copy of which is attached hereto as Exhibit A and made a part hereof, and explicitly to the covenants set forth therein." Agreement I was attached to and duly recorded with this deed. (The parties are not in agreement as to the dates and sequence in which these documents were executed; appellees maintain that the three documents were all executed at the same time and place.) In January 1984, Tuley Homes entered Agreement II, containing certain covenants, with two appellees who were not original parties to Agreement I. Agreement II was not executed as a part of any conveyance of real property or interest therein, but was duly recorded in the deed book on January 16, 1984. Agreement II contains a legal description of the property at "Exhibit A," attached thereto and recorded therewith. On April 13, 1984, Tuley Homes conveyed the property to J. O. Womack and Richard L. Tuley by warranty deed recorded on May 10, 1984. This deed, although not expressly referring to Agreements I and II, provides: "This conveyance is made subject to all . . . restrictions of record affecting said described property." By warranty deed, duly recorded on December 30, 1988, Richard Tuley conveyed to Billy L. Watson "a one-half undivided interest" in the property. This deed also contains only a general provision subjecting the conveyance to all restrictions of record affecting the property. By warranty deed, duly executed on December 14, 1988 and recorded on December 30, 1988, J. O. Womack conveyed to Womack & Womack Associates, Inc. a one-half undivided interest in the property. This warranty deed also does not expressly refer to Agreements I and II but likewise contains a provision subjecting the conveyance to all restrictions of record affecting the property. By warranty deed executed on December 14, 1988 and duly recorded on December 30, 1988, Womack & Womack Associates conveyed its one-half undivided interest in the property to Billy L. Watson. This document contains a typed provision subjecting the conveyance to all restrictions and easements of record. By warranty deed executed on November 28, 1989 and recorded on January 10, 1990, Billy L. Wat-

son conveyed the property to appellant Toyota; this deed contains no provisions subjecting the conveyance to restrictions of record. *Held*:

1. Agreement I was duly recorded by its attachment to the warranty deed by grantor Richard Tuley to grantee Tuley Homes. "Accompanying instruments which are virtually a part of the deed itself, such as [a restrictive covenant agreement to which the conveyance is, as here, expressly made subject], are, if properly attested, recordable along with or in connection with the deed, although there may be no statute specifically authorizing the record of such instruments." Ga. Real Estate Law, § 19-120 (3rd ed.); compare OCGA § 44-2-126. Moreover, extrinsic material, including contracts and documents, may be made a part of a deed by reference, and persons dealing with the land thereafter become chargeable with notice of writings so referred to even though they may not be found on the public records. Ga. Real Estate Law, supra at § 19-135.

If a grantor sells his property with restrictions which he intends are for the benefit of his neighbors, the neighbors, as beneficiaries, may enforce the benefiting restrictions. *Jones v. Gaddy*, 259 Ga. 356, 357 (2) (380 SE2d 706). The deed of conveyance from Richard Tuley to Tuley Homes, together with Agreement I explicitly attached thereto and to which the conveyance was made subject, establishes clearly and unequivocally on the face of the documents the intent of the grantor that a covenant running with the land was created for the benefit of the eight appellees who were parties to Agreement I. When, as in this case, a grantee (Tuley Homes) accepts a deed, he is bound by the covenants contained therein even though the deed has not been signed by him. OCGA § 44-5-39. Appellant Toyota is a successor in title to the property claiming its title through the grantee Tuley Homes; as such appellant also is bound by the terms of the covenant running with the land "and this is true although the deed under which [successor Toyota holds] immediate title may make no reference to restrictions." Ga. Real Estate Law, supra at § 19-195.

The various cases cited by appellant Toyota and appellees are factually distinguishable. However, we find the rationale expressed in *Muldawer v. Stribling*, 243 Ga. 673 (256 SE2d 357) to be controlling. Accordingly, we conclude that a covenant running with the land was created to the benefit of the eight appellees who were parties to Agreement I. Toyota, as a successor in title is bound by these restrictive covenants; and, "[w]here[, as in this case,] a grantor sells his property with a restriction benefiting his neighbors, the neighbor[s], as the beneficiary, may enforce it." *Muldawer*, supra at 676.

2. However, the exception created in *Muldawer*, supra, is not controlling as to whether a covenant running with the land was created by the recording of independent Agreement II and the subsequent conveyance of the property without any explicit reference to

said agreement. *Muldawer* cannot legitimately be extended to encompass transactions such as occurred in regard to Agreement II and the subsequent conveyance of property without explicit reference thereto. Compare *Johnson v. Myers*, 226 Ga. 23 (172 SE2d 421). As to Agreement II there exists no covenant running with the land.

*Nevertheless*, the covenant in Agreement II is enforceable, declarations or agreements of restrictive covenants can be independently recorded, and when duly recorded provide constructive notice thereof. See *Hendley v. Overstreet*, 253 Ga. 136 (318 SE2d 54); cf. *Kole v. Linkenhoker*, 259 Ga. 82, 84 (377 SE2d 671). "It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Punctuation omitted.) *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732). "He who takes with notice of an equity takes subject to that equity." OCGA § 23-1-16. "Equity will enforce a lawful restrictive agreement concerning land against a person who takes with notice of the contract. In such a case, the person violating the agreement, though not a party to it, is a privy in conscience with the maker." *Langenback v. Mays*, 207 Ga. 156, 158 (2) (60 SE2d 240); Ga. Real Estate Law, supra, § 22-8, n. 2. After referencing the rule of law pertaining to covenants running with the land expressed in *Johnson*, supra, this court observed in *Sewell v. OK Oil*, 203 Ga. App. 701, 703 (417 SE2d 408) that "in *Rosen v. Wolff*, 152 Ga. 578, 585-586 (110 SE 877) . . . the Supreme Court stated: 'There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. *It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties.* It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice [actual or constructive] of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights.' " (Emphasis supplied.) "[I]n an appropriate circumstance, an equitable servitude can be created, based upon a person taking land with notice of a covenant and thus giving rise to a 'privity of conscience.' " *Murawski v. Roland Well Drilling*, 188 Ga. App. 760, 765 (374 SE2d 207). Appellant Toyota had constructive knowledge of Agreement II and took the property subject to the equitable servitude thereby created. OCGA § 23-1-16; see *Rosen*, supra; *Sewell*, supra at 704.

3. Appellees claim there exists no actual controversy involving

palpable insecurity in this case, and that accordingly the trial court was without power to act by way of declaratory judgment. Appellant consistently has maintained it was not bound by the restrictive covenants arising from Agreements I and II and, after voluntarily dismissing the second count of its complaint, sought only declaratory judgment. We agree that under the attendant circumstances this case is not ripe for declaratory judgment resolution. Compare *Bus. Software v. Information Assoc.*, 201 Ga. App. 565 (411 SE2d 565); see *Sentry Ins. v. Majeed*, 194 Ga. App. 276 (390 SE2d 269), aff'd 260 Ga. 203 (391 SE2d 649); cf. *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16 (413 SE2d 450).

*Judgment affirmed. Cooper and Blackburn, JJ., concur.*

DECIDED JANUARY 28, 1994 —
RECONSIDERATION DENIED FEBRUARY 11, 1994 — 

*Morris, Manning & Martin, Joseph R. Manning, Ann R. Schildhammer*, for appellant.
*King, Taylor & Stovall, James F. Stovall III*, for appellees.