### A98A0866. DESAI v. OK OIL, INC.
(505 SE2d 271)

BLACKBURN, Judge.

Mayank D. Desai filed a complaint for declaratory judgment seeking a determination as to whether an agreement to purchase petroleum products made between OK Oil, Inc. and John Bagby, a previous owner of Desai's unimproved property, was a covenant running with the land which bound subsequent purchasers with knowledge thereof. The superior court concluded that the agreement created a binding encumbrance, of which Desai had notice and was thereby bound by it. Desai appeals from the trial court's holding.

The record reveals these pertinent facts: On May 10, 1985, Gerald Lawhorn, the owner of OK Oil, Inc. (OK), sold a parcel of property to John Bagby. There is no evidence that the deed contained any restrictions on the use of the land. On the same day that Lawhorn sold his property to Bagby, Bagby entered into an agreement with OK. The agreement provided: "FOR AND IN CONSIDERATION OF the commitment of OK to provide gasoline and diesel fuel to Owner

[who is defined as John Bagby] pursuant to the terms of this contract, at the site . . . hereinafter referred to as the location, and of Owner's commitment to actively and aggressively conduct the retail sale of gasoline and diesel fuel provided to it by OK at the location, and of the mutual promises, agreements and covenants contained herein, the parties contract as follows: (1) Within six months of the receipt of written notice from John Bagby, OK shall, at its sole expense furnish at the location [the equipment necessary to operate a gas station]. . . . Title to the equipment shall remain in OK and the equipment shall not become a part of the real property where it is located. . . . (9) It is specifically understood between parties hereto that the execution of this contract and the total or partial performance of the obligations undertaken pursuant hereto by both parties, grants unto OK for thirty years, the exclusive right to provide gasoline and diesel fuel for retail sales from the location and no gasoline or diesel fuel obtained from any other source shall be sold or distributed from the location during said time without the express written consent of OK."

Bagby agreed to give OK unlimited access "to its equipment at the location to deliver product, read pumps or tanks, etc." The agreement, however, did not require Bagby to build a gas station. In fact, OK was only to perform its part of the agreement upon receipt of written notice from Bagby. Lawhorn testified: "The restrictions don't require the owner of that land to sell gas. I mean, they can put a McDonald's there, if they want to." Further, the agreement was made terminable with the mutual assent of the parties. The agreement also contained a clause stating that it "shall not be assignable by either party without the express written consent of the other." Although the agreement was not recorded in the real estate records, an indenture referencing the agreement was recorded. This indenture provided that: "[John Bagby], in consideration of the terms, covenants, conditions and agreements on the part of [OK] that are mentioned, demises and encumbers to [OK], and [OK] acquires rights therein from [John Bagby] to [the property at issue] [t]o have and to hold the demised premises for the term commencing on the 10th day of May, 1985, and ending on the 10th day of May, 2015, or upon the completion of the term prescribed, *upon the terms, covenants and conditions contained in a certain collateral agreement* between the parties bearing the same date as this instrument and executed contemporaneously therewith." (Emphasis supplied.)

On June 5, 1985, Bagby gave Lawhorn a first right of refusal to purchase the property. On February 20, 1986, Bagby sold the property to OK and Lawhorn quitclaimed his first right of refusal to Bagby. In 1989, OK sold the property to Dan Dupree. Dupree also signed an agreement to purchase gasoline from OK. The terms and

conditions of that agreement were the same as those between OK and Bagby. This agreement was not filed, nor was any indenture. However, the deed stated that the conveyance to Dupree was made subject to "the covenants and restrictions recorded in Deed Book 282, page 814, of the Spalding County Superior Court Records." This statement was intended to refer to the filed indenture between Bagby and OK, although that document was actually filed in a different deed book. There is no evidence that Dupree undertook to build a gas station on the property or otherwise improve it while he owned it. In 1993, Dupree conveyed the property by a deed in lieu of foreclosure to Bank South. Thereafter, Bank South sold the property to Andrew Blake and Searcy-Smith Realty.

In 1995, Blake and the realty company entered into a contract to sell the property to Desai. Desai's attorney discovered the indenture and, upon contacting OK, learned of the agreement between Bagby and OK. Blake and the realty company, upon learning that OK had "invested heavily in a site across the street" from the property and "would fight anyone who intend[ed] to sell oil there," made a claim with their title insurer. Based on this cloud on the title, the insurer offered a sum in settlement of the claim. Blake and the realty company accepted the settlement and reduced the property's sale price to Desai by the same amount received from the insurer. Desai then took the property with knowledge of the possible encumbrance and shortly thereafter filed the instant declaratory judgment action. The superior court concluded, based upon our decision in *Sewell v. OK Oil*, 203 Ga. App. 701 (417 SE2d 408) (1992), that Desai's property was "encumbered" by the agreement, that he had notice of the encumbrance, and that, therefore, the agreement was binding upon Desai and all subsequent purchasers of the property.

Desai argues that when OK obtained title to the property in 1986, the covenant merged into the larger estate. OCGA § 44-6-2 provides that "[i]f two estates in the same property shall unite in the same person in his individual capacity, the lesser estate shall be merged into the greater." "However the controlling consideration is the intention, express or implied, of the person in whom the estates unite, provided the intention is just and fair, and a merger will not be permitted contrary to such intent. Further, the doctrine of merger, designed primarily for the one who acquires an interest in the property greater than he possessed in the first instance, will not be held to apply against his will to his disadvantage." (Citation and punctuation omitted.) *Gosnell v. Waldrip*, 158 Ga. App. 685, 686 (2) (282 SE2d 168) (1981). Therefore, because OK did not intend that the estates merge, such intention controls.

The evidence demonstrates that Desai had actual notice of the agreement prior to purchasing the property. Therefore, the disposi-

tive issue in this case is whether the contract and indenture between Bagby and OK bound subsequent purchasers of the property with notice. The issue in *Sewell,* supra at 702, was framed almost identically: "The issue before us is whether the covenant between OK Oil and Waggoner was purely personal or whether it created an encumbrance which was enforceable against a subsequent purchaser of the property." It further appears that the agreements being interpreted in *Sewell* and those in the present case are substantially similar, if not identical. Therefore, we must agree with the trial court that our opinion in *Sewell* controls the outcome of the present case. The fact that gas tanks had already been installed in *Sewell* and not in the present case is not dispositive of whether the agreement can be enforced against subsequent purchasers with notice. As we found in *Sewell,* "the prior property owner did not retain 'the full enjoyment of the property' but rather conveyed to the oil company *both* the right to install and maintain such tanks, pumps and other equipment on the property as were necessary to the operation of a self-service retail gasoline outlet at that location *and* the right of 'unlimited access to its equipment at the location to deliver product, read pumps or tanks, etc.' " Id. at 703-704.

There is no question that Desai purchased the property with knowledge of the encumbrance. Therefore, the fact that Dupree's deed referred to the wrong deed book when referencing the covenant with Bagby is not dispositive as to whether the covenant is enforceable against Desai. See *Timberstone Homeowner's Assn. v. Summerlin,* 266 Ga. 322, 323-324 (467 SE2d 330) (1996) ("[w]hether the assessment obligation is a covenant running with the land or an equitable servitude, it is clear that [the] restrictive covenant . . . is an enforceable covenant against a purchaser with notice"). According to our Supreme Court of Georgia: "Covenants relating to land, or its mode of use or enjoyment, are enforceable against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights." (Punctuation omitted.) Id. at 323.

Based on the foregoing, the trial court did not err in enforcing the covenant at issue against Desai.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

*Don H. Taliaferro*, for appellant.
*Shepherd & Johnston, William G. Johnston III*, for appellee.