A01A0547. SOFRAN PEACHTREE CITY, LLC v. PEACHTREE CITY HOLDINGS, LLC.
(550 SE2d 429)

BLACKBURN, Chief Judge.

Sofran Peachtree City, LLC (Sofran), plaintiff below, appeals the trial court's denial of its motion for summary judgment and the grant of summary judgment to defendant Peachtree City Holdings, LLC (PCH) as to PCH's right to enforce a no-building restriction on cer-

---

[7] *Moore v. State,* 236 Ga. App. 889, 890 (514 SE2d 73) (1999).
[8] *Jones v. State,* 208 Ga. App. 472, 473 (431 SE2d 136) (1993).

tain real property. We affirm.

After being thwarted in its efforts to sell a certain piece of realty, Sofran sought declaratory relief and sued PCH. The litigation hinged on whether PCH had a right to enforce a "no-build" restriction against a 2.144-acre tract known as the "Sign Parcel." Sofran, the owner of the Sign Parcel, wanted to sell it to a buyer who would develop it. The trial court refused to grant Sofran the desired declaratory relief and, instead, awarded summary judgment to PCH. The trial court determined that the 20-year "no-build" restriction is a covenant running with the land and that PCH has a right to enforce that restriction. In this appeal, Sofran challenges the denial of its motion for summary judgment and the grant of summary judgment to PCH. Having reviewed the controlling legal documents in the context of the applicable rules of contract construction, we affirm.

At issue are questions of law — whether certain recorded documents create an encumbrance or restriction upon Sofran's property that is capable of being waived and whether PCH has standing to enforce that restriction. See *Hardin v. Great Northern Nekoosa Corp.*[1] To resolve legal questions of this nature, the trial court employs the rules of contract construction and ascertains the intention of the parties, unless such ambiguity appears that cannot be negated by the court's application of the statutory rules of construction. *Duke v. KHD Deutz of America Corp.*[2]

PCH and Sofran are both developers of commercial real estate. In February 1995, PCH and Sofran entered into a preliminary agreement for PCH to sell two tracts of land to Sofran, a 14.7-acre piece and the "Sign Parcel." Exhibit D of the preliminary agreement depicts a plot plan of the shopping center on which a label affixed to the Sign Parcel denotes it as "Property Having a 20 Year 'No Building' Restriction." This raw land was part of a 70.2-acre commercial site in Peachtree City known as the Kedron Village Shopping Center. When the transaction between PCH and Sofran was consummated on December 1, 1995, a number of documents were executed or finalized including, inter alia, a "Second Amendment to Agreement for the Sale and Purchase of Real Estate" (sale agreement), a deed to secure debt, a limited warranty deed, and a "Restriction, Operating Easement Agreement" (REA). In section 5 of the sale agreement, PCH and Sofran agreed that the Sign Parcel would be subject to "a restrictive covenant substantially as follows":

> For a period of the twenty (20) years from the date of Closing, no building or other improvements, other than a single

[1] *Hardin v. Great Northern Nekoosa Corp.*, 237 Ga. 594, 597 (229 SE2d 371) (1976).
[2] *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996).

pylon sign, with underground utilities and landscaping appurtenant thereto, shall be constructed or installed on the property located at the southeast corner of Peachtree Parkway and Georgia Route #74 and more particularly described in Exhibit D attached hereto and made a part hereof.

Section 6 of the sale agreement requires that the purchase money security deed be subject to the restrictive covenant in section 5.

The limited warranty deed governing the conveyance between PCH and Sofran was made expressly subject to, inter alia, "[t]he Reciprocal Easement and Operating Agreement between Grantor and Grantee of even date herewith." As PCH and Sofran concede, the limited warranty deed should have referred to the REA which was filed and recorded the same day as the deed. This REA, an 18-page document executed at closing and filed and recorded shortly thereafter, expressly includes a 20-year no-build restriction on the Sign Parcel. Section 13 (b) (viii) of the REA provides: "[n]o building or structure except for the Pylon Sign (as defined in section 16 hereof), and improvements accessory thereto, shall be constructed or maintained on the Sign Parcel for a period of twenty (20) years from the date hereof." Subsection (e) of section 13 of the REA sets forth only one contingency that would void subsection (b) (viii) and the other restrictions that preceded it. This subsection provides, "[n]otwithstanding anything contained herein to the contrary, at such time as Kroger shall no longer have a legal or equitable interest in the Shopping Center Property, the provisions of subsection (b) of this section 13 shall become null and void and of no further force and effect." It is undisputed, however, that Kroger continues to retain an equitable interest in the shopping center property under a long-term lease.

About three months after the closing, PCH and Sofran agreed to modify the original REA by means of a document entitled the "First Amendment to Restriction, Operating and Easement Agreement." Although altering, deleting, and substituting a few sections, the three-page amendment left most of the original REA unchanged. Section 16 of the amended REA provides, "Sofran hereby declares and establishes the perpetual right, privilege and easement for the benefit of the Shopping Center Property to construct, maintain, service and replace the Shopping Center Pylon Sign as shown on the Plot Plan (the 'Pylon Sign') on the Sign Parcel." Section 16 of the amended REA continues:

Subject to the restrictions set forth in Section 13 (b) (viii) herein, [the 20-year no-build provision on the Sign Parcel], and further subject to the prior written approval of (i) Kro-

ger so long as Kroger has a legal or equitable interest in the Shopping Center Property and (ii) PCH so long as the purchase money security deed held by PCH and secured by the Sign Parcel remains open of record, the Owner of the Sign Parcel shall have the right to relocate the Pylon Sign and the Sign Utilities on the Sign Parcel as necessary to accommodate the development of the Sign Parcel. The base of the Pylon Sign, as the same may be relocated as provided herein, shall not exceed 1,000 square feet.

After selling the two tracts to Sofran, PCH continued to own certain parcels adjacent to the shopping center as well as some nearby outparcels. When Sofran decided to market and sell the Sign Parcel, Sofran consulted with Kroger and the current owner of the shopping center. By letter of November 25, 1998, Kroger communicated its willingness to consider a waiver of the 20-year "no-build" restriction on the Sign Parcel. Kroger conditioned any waiver on the insertion of an amendment to the REA to "restrict the Sign Parcel as a 'Contiguous Outlot' under the REA." Similarly, Principal Mutual Life Insurance Company (Principal Mutual), the current shopping center owner, indicated by letter dated December 26, 1996, its potential willingness to waive the 20-year "no-build" prohibition provided that the Sign Parcel be "deemed a Contiguous Outlot pursuant to the REA and subject to certain building, height and parking restrictions." After obtaining the preliminary approvals from Kroger and Principal Mutual, Sofran began to market the Sign Parcel. When PCH threatened legal action to enforce the no-build restriction, Sofran informed PCH that Kroger and Principal Mutual had exclusive right to enforce the restriction. Nevertheless, Sofran halted its efforts to market the Sign Parcel and filed the underlying declaratory judgment action.

In its sole assertion of error, Sofran asserts that the trial court erred by concluding that under the contractual provisions of the REA, PCH has a right to enforce the no-build restriction on Sofran's property. Sofran contends that the trial court erred in finding that: (1) the no-build restriction is a covenant running with the land, (2) the Sign Parcel property is not included in any references to "Parcels" in the REA, and (3) PCH has a right under the REA to enforce the no-build restriction. Sofran contends that in January 1997, when it repaid the purchase money loan to PCH and PCH then cancelled the security deed on the property that included the Sign Parcel, PCH forfeited all right to enforce the restriction. Sofran argues that because PCH no longer has any legal or equitable interest in the Sign Parcel, it does not have a right to restrict development on it. Sofran claims that only the owner of the shopping center and Kroger have a right to

enforce the limitation at issue. We disagree.

When an agreement consists of multiple documents that are executed at the same time and during the course of a single transaction, those documents should be read together. *Quintanilla v. Rathur*.[3] See OCGA § 24-6-3 (a). Thus, the documents here that were executed contemporaneously must be construed together. *Hardin*, supra at 597. Moreover, a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. *Roland Well Drilling v. Murawski*.[4] And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless. *Altama Delta Corp. v. Howell*.[5]

When these documents are so reviewed, they do not reveal any ambiguity. They indicate that PCH sold Sofran the property known as the Sign Parcel subject to the 20-year no-build restriction. That limitation appears in section 5 of the sale agreement, in section 13 (b) (viii) of the REA, and on the plot plan.[6] When PCH conveyed the property to Sofran, it did so under the terms of a limited warranty deed made expressly subject to the terms of the REA.[7] When construed together, these documents do not rebut the presumption that the no-build restriction was imposed for the benefit of the land retained by PCH after the sale. *Wardlaw v. Southern R. Co.*[8] See *Reeves v. Comfort*.[9]

When the language of an agreement is plain and unambiguous, the court must afford its literal meaning, despite a party's contention that he understood the contract to mean something else. See *Cotton States Mut. Ins. Co. v. Smelcer*.[10] Notwithstanding Sofran's claim to the contrary, the no-build restriction did not disappear when the deed to secure debt was cancelled. The Sign Parcel remains subject to the restrictions in section 13 (b) (viii) since the REA as amended survived cancellation of the security deed and continues to restrict the

---

[3] *Quintanilla v. Rathur*, 227 Ga. App. 788, 790 (1) (490 SE2d 471) (1997).

[4] *Roland Well Drilling v. Murawski*, 193 Ga. App. 38, 40 (386 SE2d 872) (1989).

[5] *Altama Delta Corp. v. Howell*, 225 Ga. App. 78, 79 (1) (483 SE2d 127) (1997).

[6] Although the plot plan was part of the preliminary agreement, and in large, bold print designates the Sign Parcel as "Property Having a 20 Year 'No Building' Restriction," the plot plan does not appear to have been part of the closing documents. The copy of the site plan included for our review, although partly illegible, does not contain the same large, bold print.

[7] The closing statement indicates the recording of five documents: a limited warranty deed, security deed, right of first refusal, reciprocal easement agreement, and a drainage easement.

[8] *Wardlaw v. Southern R. Co.*, 199 Ga. 97, 98 (2) (33 SE2d 304) (1945).

[9] *Reeves v. Comfort*, 172 Ga. 331, 333 (1) (157 SE 629) (1931).

[10] *Cotton States Mut. Ins. Co. v. Smelcer*, 212 Ga. App. 376, 377 (441 SE2d 788) (1994).

use of the Sign Parcel. See *Desai v. OK Oil*.[11]

The express terms of the REA belie Sofran's contention that only Kroger and Principal Mutual can enforce the 20-year no-build restriction on the Sign Parcel. While it is true that section 13 of the REA remains in effect only as long as Kroger retains a legal or equitable interest in the shopping center property, it is equally true that Kroger continues to have the requisite interest. Even assuming, arguendo, that all of the use restrictions set forth in the "Declaration of Restrictions," had been inserted therein at Kroger's request or insistence, that fact does not alter the terms of the REA.

Subsection (b) of section 17 of the REA, which remains in effect, provides in part:

> Subject to the provisions of Section 13 hereof, in the event of a breach, or attempted or threatened breach, by the Owner of any Parcel or lessee or sub-lessee within a Parcel, or any other party, of any of the terms, covenants and conditions hereof, both the Owner of the Shopping Center Property or PCH (but not the Owner of an Outlot), and any other lessee or sub-lessee to whom any such Owners shall hereafter grant such right, shall have the exclusive right and shall be entitled forthwith to full and adequate relief by injunction, specific performance, damages and all other available legal and equitable remedies from the consequences of such breach.

Thus, this subsection of the REA grants PCH an express right to seek an injunction, specific performance, damages, and "all other available legal and equitable remedies from the consequences of such breach" from the owner of any parcel or against "any other party" in the event of a breach or attempted breach of "any of the terms, covenants and conditions hereof." Therefore, PCH could proceed against Sofran who, as "any other party," was apparently attempting to breach the terms and conditions of the REA that encumbered the Sign Parcel. See *Duke*, supra at 453.

In a futile effort that would effectively rewrite the entire transaction, Sofran seeks to have the meaning of "Sign Parcel" defined to have the same meaning as the terms "Parcel" or "Parcels" as used throughout the REA. Sofran asserts that the "omission of the Sign Parcel from the list of items comprising the definition of 'Parcel(s)' was a scrivener's error." Sofran claims that "the correction of such scrivener's error would allow enforcement of the document in its entirety." The trial court, however, found Sofran's so-called "scriv-

---

[11] *Desai v. OK Oil*, 233 Ga. App. 855, 858 (505 SE2d 271) (1998).

ener's error" argument to be unpersuasive, and so do we. As the trial court succinctly noted,

> [t]his argument is wholly without merit as there is no evidence whatsoever to suggest that the parties to the contract meant or intended "sign parcel" to mean "parcel"; in fact, a reading of the Sale Agreement, the Second Amendment, the Deed, the REA, and the plot plans together points to the contrary, i.e., that "sign parcels" are not "parcels."

Sofran's argument is eviscerated by the fact that neither Kroger nor Principal Mutual would consider waiving the no-build prohibition governing the Sign Parcel unless that property was reclassified as a "contiguous outlot" which would then bring it within the meaning of "parcel" as used throughout the REA.

Finally, Sofran contends that the trial court overlooked the fundamental rule that "when construing the applicability of a restrictive covenant to a questioned parcel of land[,] a presumption will operate in favor of the free use of the land by its owner and any doubt will be resolved in favor of the owner." *C.H.E., Ltd. v. Kent.*[12] But, this presumption does not apply unless the restrictive covenant is ambiguous. *Voyles v. Knight.*[13] Here, no such ambiguity has been shown. Having read and construed the documents together, we find that a 20-year no-build restriction continues to apply to the Sign Parcel and that PCH has a right to enforce it. See *Muldawer v. Stribling.*[14] Therefore, PCH was entitled to judgment as a matter of law. See *Desai,* supra at 858.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JUNE 8, 2001.

*Scoggins & Goodman, Luke A. Kill, Meri K. Christensen,* for appellant.

*Alston & Bird, William H. Hughes, Jr.,* for appellee.

---

[12] *C.H.E., Ltd. v. Kent,* 262 Ga. 418, 419 (419 SE2d 915) (1992).
[13] *Voyles v. Knight,* 220 Ga. 305, 306 (2) (138 SE2d 565) (1964).
[14] *Muldawer v. Stribling,* 243 Ga. 673, 675, n. 3 (256 SE2d 357) (1979).