## A01A1072. LOVELL et al. v. HARTNESS.
### (554 SE2d 283)

ELDRIDGE, Judge.

The Supreme Court of Georgia transferred this case because the case involves issues of law and not equity on an action for declaratory judgment of what appears to be a case involving title to land; however, the case depends upon the Declaration of Covenants to determine if a one-acre parcel ("Property") adjacent to Duane Hartness' residential Lot 20 and between his lot and the fourteenth hole of the golf course is either a lot or comes under "Golf Course Facilities" within the meaning of the Declaration.

On cross-motions for summary judgment, Hartness and Carlos Lovell submitted the issue of whether the Property was a residential lot or a part of the Golf Course Facilities under the Declaration of Covenants governing "The Orchard," a golf course and residential development in Habersham County, which was filed by the developer Orchard Limited Partnership ("OLP") on November 21, 1988. The trial court ruled that the Property came under the class of property classified as Golf Course Facilities under the Declaration. We agree and affirm.

The Property is one acre of 734.1 acres described in the Declaration of Covenants as Exhibit A; however, at the time when the Declaration was recorded, no plat showed the individual lots, Common Areas, or Golf Course Facilities which comprised the three classes of property under the Declaration subject to the covenants, restrictions, and reserved rights. However, on September 13, 1989, the final plat of Phase II of the subdivision was recorded and showed the Property as part of the Golf Course Facilities on the fourteenth hole and not platted as a residential lot; further, the Property at that time had no lot designation as did all residential lots. The Property was never assessed for association fees as were all residential lots. Several subsequent amendments to the Declaration of Covenants and Restrictions for The Orchard were filed, but none directly affected the Property.

There was no subsequent plat made of the subdivision lots, Common Areas, and Golf Course Facilities. The surveyor of The Orchard specifically left the Property out of the subdivision lots and in the Golf Course Facilities in the plat.

In May 1993, Carlos Lovell had the same surveyor plat the Property and recorded the plat as a lot for the first time in an individual plat of the Property. Virgil Lovell claimed that the Property was "inadvertently" omitted in platting and designating lots both in 1988 and 1989; Carlos Lovell alleged that the surveyor, Hubert Lovell, told Carlos Lovell and Virgil Lovell that the Property had been missed in Phase II. Carlos Lovell claimed that he knew that the Property was a lot even if not recorded on the 1988 or 1989 plats as a lot. However, Hubert Lovell testified that in "preparing the survey [in 1989 for Phase II] I advised Carlos Lovell that I was leaving the property described in this lawsuit out of the subdivision and in the Golf Course Property because it was below the dam and the large watershed above it." Although there exists a material issue of fact as to intent and as to when actions were taken, the legal effect of the earlier conveyance under the Declaration caused covenants running with the land to attach, negating any factual dispute.

In the Declaration, OLP reserved the right to modify boundary lines, plat, and replat the Golf Course Facilities. OLP also retained the right to add additional property to The Orchard subdivision, subject to the Declaration, without the consent of the owners within the development. Under the retained powers of OLP as developer of The Orchard were the right and power to make reasonable modifications, changes, or cancellations to any provision pertaining to the development under the Declaration. The out-parceling of property came from Common Areas property that was marked for the developer's exclusive benefit on the recorded plats.

Plaintiff, Hartness, owns a one-half undivided interest in Lot 20, Phase II of The Orchard, which was conveyed to him on November 22, 1995, from Colin Halfwassen; on December 3, 1992, Halfwassen acquired his title by deed from OLP.

The parties agree that the Property is not Common Areas property of the subdivision. Randall W. Barfield, Jr., owner of Lot 21 adjoining the Property on the opposite side of the Property from Hartness, testified that when he purchased his lot that OLP agents represented to him that the Property was Common Areas property that would not be developed.

Carlos Lovell owned all of the land from which The Orchard was created. Initially, the Property was owned by Carlos Lovell and OLP who conveyed it to The Orchard Club, Inc. in 1992 as part of the Golf Course Facilities. The Orchard Club as a nonprofit organization was the Golf Course Facilities and did not own lots for sale. The Property

was not held by OLP among the inventory of residential lots that it sold. All the Golf Course Facilities owned by The Orchard Club or its successors in title were subject to the covenants and restrictions of the Declaration.

In 1992, OLP through Carlos and Fred Lovell controlled The Orchard Club and Virgil Lovell controlled its books; together, they determined to convey the Property to Carlos Lovell. On September 13, 1993, The Orchard Club quitclaim deeded the Property to Carlos Lovell, father of Virgil Lovell, with a legal description referencing the 1993 plat prepared by Hubert Lovell.

At that time and at all times previous, VEL, Inc. was the general partner of OLP, and Virgil Lovell was the sole owner. Virgil Lovell was the initial president of The Orchard Club. Carlos Lovell conveyed the Property to OLP shortly before the sale of the Property by OLP to David McEwen. OLP sold the Property to McEwen for $60,000.

On May 21, 1998, the Golf Course Facilities were sold to Gordy Management Unlimited, Inc. with the legal description given by plat book references only. The Property was not conveyed to Gordy, nor has Gordy used or maintained the Property as a portion of the Golf Course Facilities at any time. Prior to this, the Property was maintained by The Orchard Club as part of the Golf Course Facilities, and some of it was maintained by OLP. OLP now maintains the Property exclusively.

Thus, title to the Property is in McEwen, having been conveyed such interest by OLP with prior grantors Carlos Lovell and The Orchard Club.

However, who holds title to the Property is irrelevant, because the Property is subject to the covenants running with the land created under the Declaration governing the use of the Property by any owner. OCGA § 44-5-60 (a); *Smith v. Pindar Real Estate Co.*, 187 Ga. 229, 236 (3) (200 SE 131) (1938).

The conveyance of the Golf Course Facilities to The Orchard Club by deed created a privity of estate in it from the grantor, who created the Declaration with covenants of land use to all the land acquired by The Orchard Club; these covenants of use attached upon conveyance of the land, creating a covenant running with the land from that time forward. *Johnson v. Myers*, 226 Ga. 23, 25-26 (3) (172 SE2d 421) (1970).

After the filing of the Declaration, the Property was conveyed by Carlos Lovell to The Orchard Club by deed that gave as a legal description the 1989 recorded plat which in seven recorded plat sheets and list of lots described the lots, the Common Areas, and the Golf Course Facilities, which identified the uses to which such property could be put. Thus, both Carlos Lovell and OLP conveyed all the

land not designated lots or land in the Common Areas reserved for the benefit of the developer, subject to the Declaration to The Orchard Club; such land consisted of all the rest of the land shown on the plats as Golf Course Facilities, including the Property. Once conveyed out of OLP and Carlos Lovell to The Orchard Club, the covenants and restrictions attached to the land, including the Property for the benefit of all other present and future landowners, because OLP reserved no rights to change the Declaration after it conveyed such land. The reservation of rights powers were powers reserved in OLP alone to exercise. The Orchard Club had no reserved powers to change, modify, or remove covenants. Therefore, The Orchard Club and its successors in title to the Property took such property subject to the covenants of use running with the land created by the Declaration and could not remove them. See *Jones v. Lanier Dev. Co.*, 190 Ga. 887, 891 (4) (11 SE2d 11) (1940); *O'Neill v. Myers*, 148 Ga. App. 749, 750 (3) (252 SE2d 638) (1979). OLP, by such conveyance subject to the covenants running with the land, lost the reserved rights to change or modify any covenants or regulations regarding such Property that it had reserved within the Declaration, because the conveyance to The Orchard Club allowed the covenants to fully attach to the Property and could not be subsequently removed. See *Jones v. Lanier Dev. Co.*, supra at 887; *O'Neill v. Myers*, supra at 749. As long as OLP retained the initial title to the Property, it retained the power and right to change the covenants and restrictions as to the Property. However, upon the conveyance of the Property along with the Golf Course Facilities to The Orchard Club, the burden of the covenant for use on the estate passed as to all the land as "covenants real" and ran with the land; in light of such burden on the land, it could not be changed unilaterally anymore. See generally *James Talcott, Inc. v. Roy D. Warren Commercial*, 120 Ga. App. 544, 545 (171 SE2d 907) (1969).

Upon reacquiring the Property, OLP had title to the property with the burden of the covenants running with the land, but without the right to change the covenants. While OLP retained the right and power to change the covenants and restrictions as to other land to which it retained ownership, it lost such powers as to land that it conveyed away, because the covenants on the Property attached on the conveyance to The Orchard Club; the covenants for use became effective on the Property with interests in all other lot owners at that time, and OLP lost the reserved power to change the covenants as to the Property upon conveying away its initial interest to The Orchard Club in such land, even though it retained property in the subdivision. See generally *Armstrong v. Roberts*, 254 Ga. 15, 16 (325 SE2d 769) (1985); *Davis v. Miller*, 212 Ga. 836, 839 (96 SE2d 498) (1957); *Thompson v. Glenwood Community Club*, 191 Ga. 196 (12 SE2d 623)

(1940); *Frazier v. Deen*, 221 Ga. App. 153 (470 SE2d 914) (1996). Thus, no merger of estates occurred to do away with the covenants upon the revesting of the estate in Carlos Lovell or OLP, because the subdivision lot owners had acquired an interest prior to such reacquisition. OCGA § 44-6-2; *Desai v. OK Oil*, 233 Ga. App. 855, 857-858 (505 SE2d 271) (1998). Therefore, when The Orchard Club acquired the Property in the deed referencing the recorded plat as used for Golf Course Facilities under the Declaration, the Property became restricted to use as Golf Course Facilities property no matter who subsequently acquired title to it, because under the Declaration the Property now constituted Golf Course Facilities property as a covenant running with the land for the benefit of all other property owners. See *Roth v. Connor*, 235 Ga. App. 866, 868-869 (1) (510 SE2d 550) (1998); see also *Johnson v. Myers*, supra at 23; *Southeast Toyota Distrib. v. Fellton*, 212 Ga. App. 23, 26 (440 SE2d 708) (1994); *Jones v. Lanier Dev. Co.*, supra at 887.

The covenant was a use restriction that affects subsequent owners of the Property using the land for Golf Course Facilities only. See *Lowry v. Norris Lake Shores Dev. Corp.*, 231 Ga. 549, 551 (203 SE2d 171) (1974); *O'Neill v. Myers*, supra at 749.

Thus, any subsequent subdivision purchaser became vested with the right to enforce the restrictions and covenants in equity by injunction. *Muldawer v. Stribling*, 243 Ga. 673, 675-676 (256 SE2d 357) (1979); *Smith v. Pindar Real Estate Co.*, supra at 229; *Godfrey & Candler v. Huson*, 180 Ga. 483, 484 (2) (179 SE 114) (1935). Since the Property under the Declaration and the 1988 and 1989 plats is Golf Course Facilities use property, then no residential construction may be placed upon the property. However, any nonresidential structure, facility, or use on Golf Course Facilities property may be placed on the Property, including a clubhouse. See *Payne v. Borkat*, 244 Ga. 615, 617 (1) (261 SE2d 393) (1979).

*Judgment affirmed. Miller, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED AUGUST 22, 2001.

*Carey, Jarrard & Walker, Theodore W. Robinson*, for appellants.
*Adams, Ellard & Frankum, Cadman R. Kiker, Jr., Sean A. Black*, for appellee.