**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 25, 2021**

# In the Court of Appeals of Georgia

A21A0348. 2800 CHAMBLEE DIAMOND, LLC v. FITSUM et al.

MERCIER, Judge.

After a bench trial in this landlord/tenant dispute, the landlord, 2800 Chamblee Diamond, LLC ("2800 Chamblee") appeals from a trial court order ruling in favor of its tenants, Yohannes Fitsum and AJTJ Investment, LLC, on their claims for damages, and injunctive and declaratory relief. For the following reasons, we affirm in part and reverse in part.

The record reveals that Fitsum and AJTJ Investment, LLC (collectively, "AJTJ") purchased the inventory of a coin laundry from a tenant leasing property in a shopping center. In December 2018, AJTJ entered into a lease for the property (located at 2800-D NE Expressway Access Road in Atlanta, Georgia) with the landlord, Walton Glover. The lease provided that "Coin Laundry" was the permitted

use for the leased space. AJTJ also agreed to a list of fifteen "Special Stipulations," one of which provided that AJTJ "will not attempt to sell any products or services that would be in direct competition with other Tenants in the retail center" ("the stipulation"). AJTJ immediately began offering for sale the same snacks in the coin laundry that the prior tenant offered, and it assured Glover that it would not expand its offerings beyond that "grocery-wise." At some point, however, AJTJ began offering coin operated amusement machines ("COAMs") and lottery tickets in the coin laundry.[1]

In a letter dated September 12, 2019, Glover notified AJTJ that it was in violation of the lease by offering and selling items that were being offered and sold by an adjacent business owner, and Glover demanded that AJTJ "cease and desist" from offering COAMs, and from selling lottery tickets and various other items including food and clothing items. In the letter, Glover referenced both the stipulation and the permitted use under the lease.

On October 1, 2019, Glover sold the property located at 2800 Northeast Expressway NE to 2800 Chamblee, and AJTJ's lease was assigned to 2800

---

[1] There was evidence that the prior tenant offered COAMs at some point in the past, but not at the time AJTJ purchased the coin laundry.

Chamblee. Approximately two weeks later, 2800 Chamblee notified AJTJ it was exercising its right to terminate the lease and retake possession because AJTJ had failed to cure the default described in Glover's September 2019 letter.

In November 2019, AJTJ filed a complaint for declaratory and injunctive relief, arguing that the stipulation is void and unenforceable because it "lacks a geographic area or territory as required by Georgia law," and that AJTJ's use of the premises is consistent with the permitted use under the lease. AJTJ added claims for breach of the lease and for fraud based upon 2800 Chamblee's demand that it "stop selling certain goods and services."[2] 2800 Chamblee answered the complaint and filed a counterclaim for a writ of possession. However, it later dismissed its counterclaim without prejudice, and AJTJ dismissed its claim for fraud without prejudice.

Following a bench trial, the trial court granted AJTJ's request for declaratory and injunctive relief. The court found that the stipulation is ambiguous because it could be interpreted in more than one way. The court then concluded that the stipulation is void and unenforceable as a matter of law because it lacks a geographic restriction. The court also found that AJTJ did not exceed the lease's permitted use

---

[2] Fitsum testified that upon 2800 Chamblee's demand, AJTJ stopped offering COAMs in mid-December 2019.

3

by also offering lottery tickets, COAMs, and snacks. Finally, the court granted AJTJ $8,713.90 in compensatory damages for loss of revenue from the COAMs, finding that 2800 Chamblee breached the lease by "demanding that [AJTJ] remove the COAMs or face threatened legal action."[3]

2800 Chamblee now appeals, asserting that the trial court erred in granting AJTJ declaratory and injunctive relief. It argues that the court erred in its interpretation of the stipulation, and in finding that AJTJ's offerings (COAMs, lottery tickets, snacks, drinks, and sundry items) were within the lease's permitted use for the coin laundry. 2800 Chamblee argues further that the court erred in awarding AJTJ compensatory damages for breach of contract. "[I]n an action for declaratory and injunctive relief, the trial court's findings of fact shall not be set aside unless clearly erroneous." *Rigby v. Boatright*, 330 Ga. App. 181, 182 (767 SE2d 783) (2014). But our review of the trial court's construction of a contract is de novo. *Langley v. MP Spring Lake*, 307 Ga. 321, 323 (834 SE2d 800) (2019).

---

[3] The trial court also denied 2800 Chamblee's request for a directed verdict (based on a notice provision in the lease) on AJTJ's claim for breach of contract, and it denied both sides' request for attorney fees. 2800 Chamblee does not enumerate error with regard to these rulings.

1. 2800 Chamblee argues that the trial court erred in finding that the stipulation is ambiguous and unenforceable. We agree.

> As with other contracts, the interpretation of [a] restrictive covenant[ ] is a three-step process. Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction[.]

*Skylake Property Owners Assn. v Powell*, 281 Ga. App. 715, 716 (1) (637 SE2d 51) (2006) (citations and punctuation omitted). Further, under OCGA § 13-2-2 (2), "[w]ords generally bear their usual and common signification[.]" And OCGA § 13-2-2 (4) provides that "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"

5

The list of stipulations is attached to the end of the lease after the signature page and refers to "this Lease." The stipulation at issue here provides: "Tenant will not attempt to sell any products or services that would be in direct competition with other Tenants in the retail center." OCGA § 13-8-53 (a) permits the "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities[.]"

The trial court concluded that the stipulation is "at best, ambiguous" because the phrase "in the retail center" could identify the tenants at issue (as AJTJ argues) or provide a geographical restriction for the stipulation (as 2800 Chamblee argues). The court then resolved the ambiguity in favor of AJTJ, concluding that

> the phrase "in the retail center" modifies and applies to the immediately preceding term "the Tenants." In other words, the phrase "in the retail center," gives definition to the word "tenants," i.e., the type that [AJTJ] cannot compete against . . . As written (and interpreted against the drafter), there is no geographic restriction and the Special Stipulation purports to restrict [AJTJ's] ability "to sell any products or services that would be in direct competition with other Tenants in the retail center" at any location. On its face, the Special Stipulation would restrict [AJTJ] from selling, even beyond the shopping center, any potentially competitive products or services."

6

The court then concluded that because the stipulation lacks a geographical restriction, it is void and unenforceable.

"In construing the intent of restrictive covenants, the courts look to the intent of the parties, which is to be collected from the whole instrument, and the circumstances surrounding its execution." *The Stuttering Foundation v. Glynn County*, 301 Ga. 492, 500 (2) (b) (801 SE2d 793) (2017) (citation and punctuation omitted). Further, "[w]hen an agreement consists of multiple documents that are executed at the same time and during the course of a single transaction, those documents should be read together." *Sofran Peachtree City v. Peachtree City Holdings*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001) (citations omitted); see *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 575 (694 SE2d 161) (2010) (documents executed 10 days apart in the course of the same transaction were sufficiently contemporaneous). Here, the lease and stipulations were executed as part of the same transaction. We therefore read them together.

The only reference in the stipulations to the shopping center where AJTJ's coin laundry is located,[4] is in the restrictive covenant. But the lease makes multiple

[4] The lease, dated December 31, 2018, uses the term "Shopping Center" while the stipulation, signed on November 14, 2018, uses "retail center." But construing these documents together, it is clear that they refer to the same location, the shopping

7

references to the shopping center: it requires that AJTJ not take any action that would constitute a nuisance or would disturb other tenants of the shopping center or injure the reputation of the shopping center; addresses the organization of a merchants' association composed of tenants in the shopping center; and mentions AJTJ's acknowledgment of its "general contribution to commerce within the Shopping Center." In looking at the entire lease and the stipulations, the only reasonable interpretation of the restrictive covenant is that it prohibits competition with tenants of the shopping center in the geographical area of the shopping center. See *Freund v. Warren*, 320 Ga. App. 765, 768-769 (1) (740 SE2d 727) (2013) (a contract is unambiguous when it is capable of only one *reasonable* interpretation); see also *Jacob's Pharmacy Co. v. Richard & Assoc.*, 229 Ga. 156, 158-159 (2) (189 SE2d 853) (1972) (restrictive covenant applied only to plainly delineated shopping center, not later acquired property). The stipulation unambiguously provides both whom AJTJ cannot compete against and the location where competition is prohibited. The trial court, therefore, erred in finding the stipulation ambiguous and unenforceable.

---

center where the leased premises is located. See *Sofran Peachtree City*, supra; *Dabbs*, supra.

8

2. The trial court also erred in part in finding that all of AJTJ's offerings were within the lease's permitted use. Article I, Section 1.1 (p) of the lease provides, "Permitted use: Coin Laundry." The court was correct in finding that "Coin Laundry" is not defined in the lease, but wrongly concluded that the lease "does not expressly limit or exclude any specific activity at issue[.]" Article V, "Use and Care of Premises," provides that the "[p]remises may be used only for the purpose or purposes specified in Article [I], Section 1.1 (p) above and for no other purpose or purposes without the prior written consent of Landlord." Under the plain language of the lease then, AJTJ could only offer a coin laundry. See generally *Jackson County v. Upper Oconee Basin Water Auth.*, 330 Ga. App. 11, 14 (2) (766 SE2d 488) (2014) (no construction is required when the language of a contract is plain and unambiguous). And coin laundry is commonly understood to mean a facility providing coin operated washers and dryers. See generally *Citrus Tower Boulevard Imaging Center v. David S. Owens, MD, PC*, 325 Ga. App. 1, 8 (2) (752 SE2d 74) (2013) (looking to plain and ordinary meaning of term not defined in lease).

COAMs and lottery tickets do not fall under the common meaning of "coin laundry" and are therefore not permitted uses under the lease in the absence of written consent from the landlord. Thus, the trial court erred in declaring that these offerings

9

did not exceed the lease's permitted use.[5] And, as offering COAMs was not a permitted use under the lease, AJTJ was not entitled to damages for lost revenue when it ceased offering them upon 2800 Chamblee's demand.

However, there was some evidence that Glover, the assignor and former landlord, was aware that the prior owner of the coin laundry sold snacks, drinks, and other items. Evidence also showed that Glover allowed AJTJ to sell the same items when it purchased the coin laundry as long as AJTJ did not expand upon that offering.[6] Although under the lease, coin laundry was the only permitted use, as the trial court found, the parties agreed that it was acceptable for AJTJ to offer some other items "as long as they were not expanded." This mutual departure from the lease's permitted use resulted in a waiver by Glover with regard to AJTJ offering those items for sale. See, e.g., *Vakilzadeh Enterprises v. Housing Auth. &c.*, 281 Ga. App. 203, 205-206 (635 SE2d 825) (2006) ("a mutual departure from the terms of an

---

[5] The trial court relied upon evidence that other coin laundries in the area offered COAMs, the prior owner of the coin laundry here had offered COAMs at some point in the past, and that Fitsum testified he would not have purchased the coin laundry if he could not operate COAMs. But none of this evidence is relevant to a determination of whether COAMs and the sale of lottery tickets were permitted uses under the lease here.

[6] It is unclear from the record exactly what items were allowed.

10

agreement results in a quasi-new agreement suspending the original terms of the agreement"); see also OCGA § 13-4-4 (effect of mutual departure from contract terms). And 2800 Chamblee, as the assignee, assumed such waiver. See, e.g., *Southern Telecom v. TW Telecom of Ga.*, 321 Ga. App. 110, 114-115 (3) (741 SE2d 234) (2013) (assignee generally stands in the shoes of assignor and assumes assignor's obligations; rights of party to original contract are neither enhanced nor diminished by assignment).

For the above-stated reasons, we reverse the trial court's grant of declaratory and injunctive relief in favor of AJTJ based on its findings that the stipulation is void and unenforceable, and that offering lottery tickets and COAMs were within the lease's permitted use. But we affirm the declaratory and injunctive relief awarded to AJTJ with regard to its offering of snacks and other items allowed by Glover, and by assignment, 2800 Chamblee. And, because we conclude here that COAMs were not a permitted use under the lease, we reverse the award of compensatory damages to AJTJ based upon its lost revenue when it ceased offering COAMs.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Colvin, J., concur.*

11