A03A1012, A03A1013. KACE INVESTMENTS, L.P. v. HULL et al.; and vice versa.

(587 SE2d 800)

MILLER, Judge.

James M. Hull owns land developed as a shopping center adjacent to land owned and developed by Kace Investments, L.P. The two tracts of land are subject to mutual easements. Hull erected a fence between the two tracts, claiming that Kace forfeited its easement over his land when it refused to maintain sufficient qualified parking spaces on its land. Kace sued Hull to have the fence removed. Hull counterclaimed to enjoin Kace's construction of a second fence around a secure parking area on its tract. The court granted Hull summary judgment on his counterclaim, holding that Kace could not exclude him from its secure parking area. The court denied summary judgment on the issue of Hull's fence, finding that disputed issues of fact precluded definitive rulings on (i) the number of parking spaces Kace was required to maintain and (ii) the issue of Hull's alleged laches in declaring the easement over his land forfeited. Both sides appeal. We hold that the undisputed material facts mandated summary judgment in favor of Hull on all issues, and we therefore affirm in part and reverse in part.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the evidence and record de novo, construing all reasonable conclusions and inferences in

favor of the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So construed, the evidence showed that the owner of four adjoining tracts of land (Tracts A, B, C, and D) filed a Declaration in 1975, setting forth various restrictions and easements that would bind future owners of the four tracts. The respective future owners of these tracts would enjoy mutual easements over each other's parking areas, as located on those tracts from time to time. However, the owner of Tract A would, at the option of the owner of Tract C, forfeit its easement over Tract C if the owner of Tract A failed to maintain sufficient qualified parking spaces on its tract. To avoid forfeiture, the owner of Tract A had to maintain not less than five parking spaces per 1,000 square feet of floor area of any buildings constructed on its tract. The size of the parking spaces had to meet certain specified dimensions. The only exception to the 5:1000 ratio requirement was if Tract A were developed for something other than retail commercial use, in which event the owner of Tract A, to avoid forfeiture of its easement over Tract C, would be required to provide only those parking facilities required for the development by the local county zoning ordinance. The Declaration further provided that the owner of Tract A could construct buildings on its tract only in those locations designated on an accompanying plat (the "footprint" requirement). All of these covenants ran with the land. The Declaration could be modified with the consent of all the owners of the four tracts of land.

In 1981, the owner of Tract A sought to modify the Declaration to allow that owner to construct a building on Tract A in a place different from the footprint specified on the plat. The owner of Tract A and the owner of Tract C executed a Modification in which they agreed (i) to eliminate the footprint requirement on Tract A and (ii) to require a 5:1000 parking space ratio on Tract A for all buildings constructed on that tract, regardless of the purpose for those buildings.

The owner of Tract A constructed a home improvement retail establishment on its property, which establishment eventually went out of business. Hull as a subsequent owner of Tract C complained to the owner of Tract A in the early 1990s that Tract A's parking ratio was insufficient. In 1999, Hull conveyed some of Tract C to Windsor Square, LLC, an entity he owned. In October 2000, Kace executed a contract with the United States Postal Service to renovate the existing building on Tract A and then to lease it to USPS. In reliance on this contract, Kace purchased Tract A in November 2000 and began renovating the building. A quitclaim deed to Kace evidencing this transaction specifically referenced that the property was subject to the Declaration as modified.

Hull raised the parking ratio problem to Kace in a meeting in January 2001 and threatened to terminate Kace's easement over

Tract C if the problem were not resolved. When Kace did not respond as Hull desired, a few days later Hull demanded in a letter that Kace present him with a plan to develop the parking within the required ratio. Kace presented no plan satisfactory to Hull, so on March 13 Hull verbally terminated Tract A's easement over Tract C. On March 16, Hull erected a fence between Tract A and Tract C, and on March 21, Hull sent a letter to Kace confirming the termination of the easement.

On March 23, Kace sued Hull (Windsor Square was later added as a defendant) to have the fence removed and for damages. Kace admitted that under the Declaration as modified, Kace was required to create and maintain a 5:1000 parking ratio on Tract A, but stated that Kace would achieve this ratio once the renovation was complete. Thus, Kace claimed that Hull had prematurely terminated Kace's easement over Tract C. Hull counterclaimed, asking for a declaratory judgment that he properly terminated the easement. Shortly after receiving a copy of the USPS lease requiring a secure parking area on Tract A, Hull amended its counterclaim to enjoin Kace from excluding Hull from the proposed secure parking area. Both sides sought an interlocutory injunction, which was denied. Kace built a fence around the secure parking area.

Hull moved for summary judgment, arguing that under the language of the Declaration as modified, Kace was required to maintain the 5:1000 parking ratio and had not done so. Thus, Hull contended that he properly terminated Kace's easement over Tract C. Hull further argued that the now-fenced parking area violated his right to access all parking on Tract A. Kace also moved for summary judgment, contending that Hull had not properly nor timely notified Kace of the easement termination and therefore had no power to terminate the easement. Kace also argued that it met the modified Declaration's requirement of a 5:1000 parking ratio. The court granted Hull summary judgment on the issue of the fenced parking area, finding that the plain language of the Declaration required that all parking areas created on Tract A were to be available to Hull. The court denied all parties summary judgment on the question of whether Hull properly and timely terminated the easement for failure to maintain the requisite parking ratio. The court explained that the Modification was not binding to amend the Declaration, and that the unamended Declaration allowed the local zoning regulations to control the parking ratio since the building on Tract A was now something other than a retail development. The court concluded that a post office was not a retail development but that issues of fact precluded the court from classifying the building precisely under the zoning regulations. Accordingly, since the court could not determine at this stage what the local zoning regulations required for parking

facilities on Tract A, and since the court determined that some evidence showed that Hull may have neglected to assert his right to adequate parking on Tract A, the court decided that summary judgment was inappropriate.

In Case No. A03A1012, Kace appeals, arguing that the court should have granted Kace summary judgment on both issues. Kace argues for the first time that the Supremacy Clause of the United States Constitution precluded the application of local zoning regulations to United States postal facilities, and that therefore (i) any claim by Hull that the parking ratio was insufficient was without merit, and (ii) no state court had the power to order the removal of a fence required under United States postal regulations to secure employee parking areas at postal facilities. In Case No. A03A1013, Hull and Windsor Square appeal, arguing that the undisputed evidence showed that (i) the Declaration as modified required the 5:1000 parking ratio regardless of the building constructed, (ii) the parking provided on Tract A was undisputedly inadequate as only a few spaces met the required dimensions, and (iii) Hull acted diligently in asserting his parking rights on Tract A.

1. After repeatedly conceding that the Modification of the Declaration was binding and required Kace to maintain a 5:1000 parking ratio to avoid forfeiture of its easement over Tract C, Kace changed strategies below and argued that the Modification was invalid (and did not run with the land to bind successor owners) since the owners of Tracts B and D had not agreed to the Modification. Under this argument, Kace contended that the original unamended Declaration applied, which exempted Tract A from the 5:1000 parking requirement if something other than a retail development were constructed on Tract A. In that event, the local zoning ordinance applied to the development to determine the minimum number of parking spaces required on Tract A so as to avoid forfeiture of the easement over Tract C. Since Tract A now contained a post office, Kace argued below that the zoning ordinance applied (under which a smaller ratio than 5:1000 allegedly governed) and that therefore the parking spaces provided on the tract were sufficient. Kace also urged that even if the 5:1000 ratio did apply, the parking spaces on the tract met this ratio.

As conceded at appellate oral argument, Kace did not argue below (either in one of its briefs or in the two oral arguments held on the summary judgment motions) that the Supremacy Clause of the United States Constitution precluded the application of the local zoning ordinance to determine the parking requirements of the postal facility. Nor did Kace argue that federal postal regulations (which Kace now contends required a secure parking area, cf. 39 CFR § 232.1 (b) (3) and (d)) superseded the Declaration provision requir-

ing that all Tract A parking be available to Tract C's owner. Contrary to Kace's appellate argument, a trial court's judicial notice of the provisions of the federal constitution does not mean that that court is required to rule on issues not raised.

"To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.'" (Punctuation and footnote omitted.) *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002). Therefore, "[i]ssues never raised at trial will not be considered for the first time on appeal." (Citation and punctuation omitted.) *Coweta County v. City of Senoia*, 275 Ga. 707, 709 (4) (573 SE2d 21) (2002). We will not consider Kace's Supremacy Clause and federal postal regulation arguments since they were not raised nor ruled upon below. See *Collins v. Bazan*, 256 Ga. App. 164, 165 (1) (568 SE2d 72) (2002) ("Constitutional issues not raised below are not preserved for appeal.") (citations and punctuation omitted).

Moreover, even if we did consider these arguments, they would fail since a "landlord cannot create any greater interest in his lessee than he himself possesses, and the lessee takes subject to all claims of title enforceable against the lessor." (Citation and punctuation omitted.) *Pressley v. Jennings*, 227 Ga. 366, 369 (2) (180 SE2d 896) (1971). Kace simply could not convey to the USPS greater easement rights over Tract C than Kace possessed, and the USPS took the Tract A property subject to Hull's parking easement rights over Tract A.

2. Kace argues that the court erred in holding that the Declaration required that Hull as owner of Tract C have unrestricted access to all parking established on Tract A. The undisputed evidence showed that Hull was denied access to a parking area on Tract A — specifically, a paved area located in the rear of the post office building that had been striped and designated for secure parking for post office vehicles. This lot was enclosed by a fence, which was locked at night and on Sundays. When Hull parked his vehicle in the area while the fence was unlocked, his vehicle was towed from the property. Kace counters that this area was not established as a public parking area and therefore was not subject to Hull's parking easement.

The Declaration provides:

[The] Declarant does hereby establish and create for the benefit of each and every person, firm or corporation hereafter owning any part of the Tracts "A", "B", "C" and "D" a permanent mutual reciprocal and non-exclusive easement, license, right and privilege of passage and use, both pedes-

trian and vehicular, for the purpose of ingress and egress over all roads and driveways and parking upon all parking areas located from time to time upon the Entire Premises, provided that except as otherwise provided herein, the owners of Tracts "A", "B", "C" and "D", respectively, shall have the right to relocate buildings, walkways and parking areas in any manner whatsoever and the easement, license, right and privilege granted by this instrument shall then apply to the areas so established.

As so concisely stated by the trial court in its summary judgment order, "[t]he Declaration says what it says: that the owner of Tract C shall have a non-exclusive right to park upon 'all parking areas' located from time to time on the Entire Premises, including Tract A." The Declaration does not support Kace's attempt to distinguish between parking areas established for public parking and other parking areas not established for public parking. As the trial court stated below, we "decline[ ] to engage in the mental gymnastics necessary to define the area at issue here as anything other than a parking area. By the terms of the Declaration, Defendant Hull cannot be excluded from the area." The trial court ruled correctly.

3. Kace next argues that the summary judgment order, to the extent it enjoined Kace from excluding Hull from the secure parking area, described the parking area insufficiently to be valid under OCGA § 9-11-65 (d). We hold that the description contained in the court's order was sufficient.

OCGA § 9-11-65 (d) requires that "[e]very order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ." If on its face the written order does not specifically describe the property which is the subject of the injunction, the order is invalid. *Hendrix v. Hendrix*, 254 Ga. 662-663 (333 SE2d 596) (1985). A legal description of the property is not required, but simply a reasonable description that specifically identifies the property and specifies the act restrained. See *Shiver v. Benton*, 251 Ga. 284, 289 (4) (304 SE2d 903) (1983).

Here the court in the beginning of its summary judgment order described the county and street location of the Tract A owned by Kace and stated that Kace had recently renovated and leased a building located thereon to the USPS for a post office. In Section 1 of its order, the court stated that Hull had been denied access to "a parking area located on Tract A: specifically, a paved area located in the rear of the post office building that has been striped and designated for secure parking for post office vehicles. It appears from the record that this lot was enclosed by a fence, which was locked at

night and on Sundays." At the conclusion of its ruling, the court ordered:

> Based on its interpretation of the Declaration, the Court has determined, as a matter of law, that Defendant Hull's parking easement extends to the paved striped parking area discussed in Section 1 of this order and that Defendant Hull may not be excluded from the area. The Court hereby orders that Plaintiff is enjoined from restricting access to the area in question by means of a locked fence in violation of Defendant Hull's easement rights.

We hold that the court's order sufficiently described the property and the act to be restrained. If Kace were in doubt, it should have requested a modification or construction of the order's terms. See *Gen. Teamsters Local Union No. 528 v. Allied Foods*, 228 Ga. 479, 481 (2) (186 SE2d 527) (1971).

4. Kace argues that summary judgment on this "exclusive fence" issue was improper in that some evidence showed laches — namely, that Hull unreasonably delayed his efforts to seek an injunction against the construction of the proposed fence. Indeed, under Georgia law, a "party is not entitled to an injunction when, with full knowledge of his rights, he has been guilty of delay and laches in asserting them, and has negligently suffered large expenditures to be made by another party. . . ." (Citation and punctuation omitted.) *Black v. Barnes*, 215 Ga. 827, 829 (1) (114 SE2d 38) (1960).

The undisputed facts here show otherwise. No fence around the USPS secure parking area had been erected at the time Kace brought the present action against Hull, and in his counterclaim Hull immediately complained that Kace apparently intended to fence off the rear area of the post office. When through discovery Kace finally gave a copy of the USPS lease to Hull, which specified a secure parking area, Hull within a matter of days amended his counterclaim to request an injunction to preliminarily and permanently enjoin Kace from setting aside exclusive parking at the rear of the post office. These undisputed facts reflect the absence of any laches by Hull.

5. In addition to the unpreserved Supremacy Clause argument (see Division 1 above), Kace contends that the Modification was invalid and that under the unamended Declaration, Kace provided the requisite number of parking spaces to avoid the forfeiture of its easement over Tract C. Accordingly, Kace argues that the court erred in not granting Kace summary judgment on its claim to have Hull's fence between the two tracts removed. Conversely, Hull argues in his cross-appeal that the court erred in not granting him summary judg-

ment on this issue. Hull claims that the undisputed evidence showed that the Modification governed and that Kace did not maintain the requisite 5:1000 parking ratio. We agree with Hull.

The first question is whether the Modification, executed by the owners of Tracts A and C but not the owners of Tracts B and D, was valid even though not signed by the owners of Tracts B and D. Although the Declaration required the consent of all owners to effect an amendment thereto, two parties as amongst themselves certainly had the power to enter into a separate agreement or "Modification" to bind just them and their successors. Such would not preclude nonparties to the Modification from relying on the original Declaration.

The second question is whether the Modification was effective so as to run with the land, i.e., to require subsequent owners of Tract A to maintain the 5:1000 parking ratio set forth in the Modification regardless of the type and purpose of any buildings constructed on Tract A. This question, however, is moot under *Rosen v. Wolff*, 152 Ga. 578, 585-586 (2) (110 SE 877) (1922), which held:

> There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. *It is immaterial in such cases whether the covenant runs with the land or not,* the general rule being that it will be enforced according to the intention of the parties. *It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it.* Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights.

(Emphasis supplied.) Accord *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996); *Desai v. OK Oil*, 233 Ga. App. 855, 858 (505 SE2d 271) (1998); see also *Sewell v. OK Oil*, 203 Ga. App. 701, 704 (417 SE2d 408) (1992).

Here it is undisputed that the Modification, executed by the former owners of Tracts A and C, concerned Tract A and its use. Since the Modification was recorded, Kace as a subsequent purchaser was charged with legal notice of the covenant, even if the Modification had not been stated in Kace's deed. *Timberstone Homeowner's Assn.*, supra, 266 Ga. at 323. In any case, the quitclaim deed to Kace specifically referenced the Modification as relating to the property. Accordingly, Kace had actual notice, and the Modification was enforceable against Kace.

The third question is whether the parking on Tract A conformed to the requirements of the Modification. In exchange for allowing Tract A's owner to construct a building in a place different from that indicated in the original Declaration, the Modification required the owner of Tract A to maintain a 5:1000 parking ratio regardless of the purpose of any buildings constructed on the tract. All other provisions of the original Declaration were affirmed. The Declaration required all parking spaces to meet the dimensions specified in the local zoning ordinance.

The undisputed evidence showed that of the 297 parking spaces striped on Tract A (which included those within the secure parking area), 262 did not meet the dimensions specified in the local zoning ordinance. Inasmuch as the buildings on Tract A contained in excess of 40,000 square feet of floor space (with the post office itself containing more than 30,000 square feet), the 35 qualifying spaces did not meet the more than 200 parking spaces required on Tract A to maintain a 5:1000 ratio. Kace's conclusory affidavits and statements that the requisite number of spaces was present in no way addressed the required dimensions of those spaces and were therefore ineffective to contradict the direct and specific evidence that most of the striped spaces did not meet the dimensions required under the Declaration. See *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746, 747-748 (1) (171 SE2d 521) (1969) (plaintiffs' affidavits stating that a park admission charge was paid did not contravene defendant's specific affidavits that the charge was merely a parking fee; summary judgment for defendant affirmed); *Norris v. Kunes*, 166 Ga. App. 686, 688 (305 SE2d 426) (1983) (nonmovant must present evidence of specific facts, not mere conclusions, to contravene movant's evidence).

Since the undisputed evidence showed that Kace did not maintain the parking required under the Modification, Hull had the option to terminate Kace's easement over Tract C. Accordingly, the court erred in denying Hull's motion for summary judgment on this issue.

6. Hull contends that the trial court erred in holding that disputed issues of fact precluded summary judgment on whether Hull acted diligently in terminating Kace's easement over Tract C. We agree with Hull. The undisputed evidence showed that after Kace purchased Tract A in November 2000 and began the renovation of the existing building, Hull met with Kace in January 2001 to discuss the inadequate parking issue. Dissatisfied with the meeting, a few days later Hull demanded that Kace indicate in a specific plan how the adequate parking would be provided on the tract for its existing and under-renovation buildings. When Kace did not present a plan satisfactory to Hull, on March 13 Hull verbally terminated the easement over his property. On March 16, Hull erected a fence between

Tract A and Tract C, and on March 21, Hull sent a letter to Kace confirming the termination of the easement. These undisputed facts showed no lack of diligence on the part of Hull in asserting his rights. Accordingly, the trial court erred in denying Hull summary judgment on the issue of whether he timely and properly terminated the easement.

Since the undisputed facts showed that Kace forfeited its easement by failing to maintain the requisite parking spaces, the trial court should have granted Hull's motion for summary judgment in its entirety, and not just in part. That portion of the court's order granting summary judgment to Hull on the issue of the fenced parking area is affirmed, and that portion of the court's order denying summary judgment to Hull on the issue of terminating the easement is reversed. For the same reason, the court properly denied Kace's motion for summary judgment, which denial is affirmed. These rulings render the remaining enumerations of error moot.

*Judgment affirmed in Case No. A03A1012. Judgment reversed in Case No. A03A1013. Smith, C. J., and Andrews, P. J., concur. Ruffin, P. J., disqualified.*

DECIDED SEPTEMBER 19, 2003 —

*Johnston, Wilkin & Williams, William J. Williams, Fleming, Jackson, Ingram & Floyd, William M. Fleming, William A. Trotter III, Warren D. Evans*, for appellant.

*Tucker, Everitt, Long, Brewton & Lanier, John B. Long, A. Montague Miller*, for appellees.