A05A2014. KACE INVESTMENTS, L.P. v. HULL et al.
(629 SE2d 26)

ELLINGTON, Judge.

Plaintiff Kace Investments, L.P. ("Kace") appeals from two orders of the Superior Court of Richmond County. Kace contends the court erred in finding it in civil contempt on February 18, 2005 for failing to comply with prior orders of the court. Kace also contends the court erred in its August 26, 2004 order by allowing defendants/counterclaimants James M. Hull III and Windsor Square, LLC (collectively "Hull") to amend the answer and counterclaim to add claims seeking damages, punitive damages, and attorney fees after Hull won on "all issues" in an appeal to this Court. Finding no error, we affirm.

This is the second appearance of this case before us. In *Kace Investments v. Hull*, 263 Ga. App. 296 (587 SE2d 800) (2003) ("*Kace I*"), we summarized the relevant facts and issues appealed as follows:

> James M. Hull owns land [Tract C] developed as a shopping center adjacent to land [Tract A] owned and developed by Kace Investments, L.P. The two tracts of land are subject to mutual easements. Hull erected a fence between the two tracts, claiming that Kace forfeited its easement over his land when it refused to maintain sufficient qualified parking spaces on its land. Kace sued Hull to have the fence removed.

Hull counterclaimed to enjoin Kace's construction of a second fence around a secure parking area on [Tract A]. The court granted Hull summary judgment on his counterclaim, holding that Kace could not exclude him from its secure parking area. The court denied summary judgment on the issue of Hull's fence, finding that disputed issues of fact precluded definitive rulings on (i) the number of parking spaces Kace was required to maintain and (ii) the issue of Hull's alleged laches in declaring the easement over his land forfeited. Both sides appeal. We hold that the undisputed material facts mandated summary judgment in favor of Hull on all issues, and we therefore affirm in part and reverse in part.

Id. Construing the evidence in the light most favorable to the non-movant, we concluded that

the evidence showed that the owner of four adjoining tracts of land (Tracts A, B, C, and D) filed a Declaration in 1975, setting forth various restrictions and easements that would bind future owners of the four tracts. The respective future owners of these tracts would enjoy mutual easements over each other's parking areas, as located on those tracts from time to time. However, the owner of Tract A would, at the option of the owner of Tract C, forfeit its easement over Tract C if the owner of Tract A failed to maintain sufficient qualified parking spaces on its tract. To avoid forfeiture, the owner of Tract A had to maintain not less than five parking spaces per 1,000 square feet of floor area of any buildings constructed on its tract. The size of the parking spaces had to meet certain specified dimensions. The only exception to the 5:1000 ratio requirement was if Tract A were developed for something other than retail commercial use, in which event the owner of Tract A, to avoid forfeiture of its easement over Tract C, would be required to provide only those parking facilities required for the development by the local county zoning ordinance. The Declaration further provided that the owner of Tract A could construct buildings on its tract only in those locations designated on an accompanying plat (the "footprint" requirement). All of these covenants ran with the land. The Declaration could be modified with the consent of all the owners of the four tracts of land.

In 1981, the owner of Tract A sought to modify the Declaration to allow that owner to construct a building on Tract A in

a place different from the footprint specified on the plat. The owner of Tract A and the owner of Tract C executed a Modification in which they agreed (i) to eliminate the footprint requirement on Tract A and (ii) to require a 5:1000 parking space ratio on Tract A for all buildings constructed on that tract, regardless of the purpose for those buildings.

The owner of Tract A constructed a home improvement retail establishment on its property, which establishment eventually went out of business. Hull as a subsequent owner of Tract C complained to the owner of Tract A in the early 1990s that Tract A's parking ratio was insufficient. In 1999, Hull conveyed some of Tract C to Windsor Square, LLC, an entity he owned. In October 2000, Kace executed a contract with the United States Postal Service to renovate the existing building on Tract A and then to lease it to USPS. In reliance on this contract, Kace purchased Tract A in November 2000 and began renovating the building. A quitclaim deed to Kace evidencing this transaction specifically referenced that the property was subject to the Declaration as modified.

Hull raised the parking ratio problem to Kace in a meeting in January 2001 and threatened to terminate Kace's easement over Tract C if the problem were not resolved. When Kace did not respond as Hull desired, a few days later Hull demanded in a letter that Kace present him with a plan to develop the parking within the required ratio. Kace presented no plan satisfactory to Hull, so on March 13 Hull verbally terminated Tract A's easement over Tract C. On March 16, Hull erected a fence between Tract A and Tract C, and on March 21, Hull sent a letter to Kace confirming the termination of the easement.

On March 23, Kace sued Hull (Windsor Square was later added as a defendant) to have the fence removed and for damages. Kace admitted that under the Declaration as modified, Kace was required to create and maintain a 5:1000 parking ratio on Tract A, but stated that Kace would achieve this ratio once the renovation was complete. Thus, Kace claimed that Hull had prematurely terminated Kace's easement over Tract C. Hull counterclaimed, asking for a declaratory judgment that he properly terminated the easement. Shortly after receiving a copy of the USPS lease requiring a secure parking area on Tract A, Hull amended its counterclaim to enjoin Kace from excluding Hull from the

proposed secure parking area. Both sides sought an interlocutory injunction, which was denied. Kace built a fence around the secure parking area.

Hull moved for summary judgment, arguing that under the language of the Declaration as modified, Kace was required to maintain the 5:1000 parking ratio and had not done so. Thus, Hull contended that he properly terminated Kace's easement over Tract C. Hull further argued that the now-fenced parking area violated his right to access all parking on Tract A. Kace also moved for summary judgment, contending that Hull had not properly nor timely notified Kace of the easement termination and therefore had no power to terminate the easement. Kace also argued that it met the modified Declaration's requirement of a 5:1000 parking ratio. The court granted Hull summary judgment on the issue of the fenced parking area, finding that the plain language of the Declaration required that all parking areas created on Tract A were to be available to Hull. The court denied all parties summary judgment on the question of whether Hull properly and timely terminated the easement for failure to maintain the requisite parking ratio. The court explained that the Modification was not binding to amend the Declaration, and that the unamended Declaration allowed the local zoning regulations to control the parking ratio since the building on Tract A was now something other than a retail development. The court concluded that a post office was not a retail development but that issues of fact precluded the court from classifying the building precisely under the zoning regulations. Accordingly, since the court could not determine at this stage what the local zoning regulations required for parking facilities on Tract A, and since the court determined that some evidence showed that Hull may have neglected to assert his right to adequate parking on Tract A, the court decided that summary judgment was inappropriate.

Id. at 297-299.

We resolved Kace's appeal by holding that the trial court correctly determined that the Declaration required that all parking areas created on Tract A were to be available to Hull and that Hull could not be excluded from Tract A. *Kace I* at 300-301 (2), 302-304 (4), (5). In reaching this conclusion, we specifically found that Kace's Supremacy Clause arguments pertaining to the application of local zoning ordinances to its USPS tenant were both untimely raised and

without merit. Id. at 299-300 (1). Therefore, we affirmed the court's injunction holding that it "sufficiently described the property and the act to be restrained." Id. at 301-302 (3). We resolved Hull's cross-appeal by determining that the trial court erred in denying Hull's motion for summary judgment. We held that since the undisputed evidence showed that Kace did not maintain sufficient parking as required under the Modification, Hull had the right to terminate Kace's easement over Tract C. Id. at 302-304 (5). We also held that Hull timely terminated Kace's easement in Tract C. Id. at 304-305 (6).

After the remittitur was returned to the superior court, Hull filed a pleading styled "Third Amendment to Answer and Counterclaim (For Injunction and Damages)." Hull averred that Kace knowingly and wilfully continued to trespass upon Tract C; kept part of the parking lot on Tract A fenced, depriving Hull of access to Tract A in violation of his easement rights and the superior court's order (which was affirmed by this Court); converted funds derived from the unauthorized rental of part of Tract A; and continued to trespass upon Hull's property rights in Tract A. Hull sought compensatory and punitive damages and injunctive relief. The trial court determined that Hull had claims in his counterclaim that remained pending after the resolution of his motion for summary judgment and allowed the amendment. Further, after a hearing on Hull's motion for contempt, the superior court found Kace in wilful civil contempt and imposed a sanction of $350 per day until Kace satisfied the stipulations of its order, which required that Kace remove any gates, fences, locks and menacing signs that obstructed Hull's access to Tract A.

1. (a) Kace contends the trial court erred in allowing Hull to amend his counterclaim, contending that no amendment is permitted following the entry of a final judgment. Kace argues that this Court's opinion resolving the appeals from the parties' cross-motions for summary judgment in *Kace I* constituted a "final decision" that effectively ended the proceedings and barred further amendment by either party.

A party's right to amend a complaint is very broad. *Glynn-Brunswick Mem. Hosp. Auth. v. Gibbons*, 243 Ga. App. 341, 346 (2) (530 SE2d 736) (2000). The trial court has always had wide discretion to allow an amendment, and unless there is a manifest abuse of that discretion, this Court declines to interfere. Id.; *Walker v. Sheehan*, 80 Ga. App. 606 (56 SE2d 628) (1949) (decided under former Code 1933, §§ 81-1301 and 81-1302). The Civil Practice Act provides that "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party." OCGA § 9-11-15 (a). Further, OCGA § 9-11-15 (b) allows for amendments to conform to the evidence under

certain circumstances "even after judgment." As a general principle, though, "[w]hile under the Code the right to amend is very broad, it may not be exercised after a case has been tried and a judgment rendered therein which has not been set aside or vacated." *Felker v. Johnson*, 56 Ga. App. 659 (193 SE 472) (1937) (decided under former Code 1933, § 81-1301). Or as more recently stated, "once the issues are narrowed for trial, the complaint stands only upon those facts adduced at trial by the plaintiff, and once a verdict is returned or a motion for directed verdict is sustained, it is too late to amend even pending remittitur." (Citations omitted.) *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 605 (203 SE2d 173) (1973). This is because "[t]here ought to be an end of litigation somewhere, sometime, and some court should be empowered to say, under reasonable legal rules, that the case is finished." (Citations omitted.) *Forrester v. Pullman Co.*, 66 Ga. App. 745, 750 (19 SE2d 330) (1942). Thus the question we must resolve is whether the evidence supports the trial court's conclusion that issues remained pending in the trial court when the remittitur was returned following *Kace I*.

The record does not contain a pretrial order. The case was never "tried" nor was a "verdict" returned. Rather the court entertained cross-motions for summary judgment and entered an order granting Hull's motion in part, denying Hull's motion in part, and denying Kace's motion in its entirety. As we stated above, we affirmed the grant of summary judgment to Hull by holding that the Declaration required that all parking areas created on Tract A were to be available to Hull and that Hull could not be excluded from Tract A. *Kace I* at 300-301 (2), 302-304 (4), (5). But we reversed the trial court, finding in Hull's favor, when we held that the undisputed evidence showed that Kace did not maintain the parking required under the Modification, that Hull had the option to terminate Kace's easement over Tract C, and that easement was timely terminated. Id. at 302-305 (5), (6). Thus, we found in Hull's favor on all the legal issues before us, but we did not affirm a decision of the trial court that was, in effect, a verdict or a final judgment that specifically terminated the case.[1] When we returned the remittitur to the superior court, we simply

---

[1] Kace contends that under the rule of *Summer-Minter & Assoc. v. Giordano*, 231 Ga. at 604-606, Hull is barred from amending. That case, however, is distinguishable. As we explained, after summary judgment was granted the defendants, the plaintiffs attempted to recast their cause of action. "The Supreme Court of Georgia held that this was too late, as plaintiffs had the obligation [under OCGA § 9-11-56 (e)] to present their case in full in opposing the summary judgment motion or run the risk of an adjudication against them." *Crown Andersen, Inc. v. Ga. Gulf Corp.*, 251 Ga. App. 551, 553 (1) (b) (554 SE2d 518) (2001). Here, Hull is not attempting to recast his complaint to avoid summary judgment. Hull won. Moreover, he has unresolved claims that were not addressed by the motions for summary judgment. Consequently, *Summer-Minter* is inapplicable. Id.

reinvested it with jurisdiction over the case. See *Hagan v. Robert & Co. Assoc.*, 222 Ga. 469, 470-472 (1) (150 SE2d 663) (1966). And while our ruling became the law of the case, the record supports the superior court's determination that the action was not fully adjudicated on the parties' cross-motions and that claims remained pending after the remittitur was returned. Specifically, in Count 2 of its counterclaim, Hull alleged that Tract A was being developed by Kace contrary to the zoning ordinance, a claim for which Hull sought injunctive relief. Neither the superior court nor this Court specifically reached this issue. Under these circumstances, we see no abuse of discretion in the court's order allowing Hull to amend his counterclaim.

(b) Kace contends the court erred in allowing an amendment that permitted Hull to assert a claim for money damages when Hull's suit originally sought only equitable relief. Kace does not elaborate on this "judicial estoppel" argument, other than to argue that the rule "prevents a party from successfully taking one position in litigation and then taking the opposite position." However, Kace has not explained how Hull's new claims for conversion and continuing trespass, for which money damages are appropriate, constitute an "opposite" position in the litigation. Nor has Kace cited any authority supporting, as a general proposition, that a complaint in equity cannot be amended to add a claim for damages. A case cited by Hull suggests that such amendments have occurred. See *Glynn-Brunswick Mem. Hosp. Auth. v. Gibbons*, 243 Ga. App. at 346 (2) (declaratory judgment action amended to allow claim for money damages). Accordingly, we find this enumeration to be without merit.

2. Kace contends the trial court abused its discretion in finding Kace in civil contempt of court because "the trial court's order was not violated or, if violated, the violation certainly was not willful."

"The appropriate standard of proof in a civil contempt case is preponderance of the evidence." (Citation omitted.) *In re Harvey*, 219 Ga. App. 76, 80 (464 SE2d 34) (1995). "[I]f there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion." (Footnote omitted.) *In re Waitz*, 255 Ga. App. 841, 842 (567 SE2d 87) (2002).

The superior court enjoined Kace from restricting Hull's access to Tract A. Specifically, the court stated "that [Kace] is enjoined from restricting access to the area in question by means of a locked fence in violation of" Hull's easement rights. The court specifically found:

The Declaration says what it says: that the owner of Tract C shall have a non-exclusive right to park upon "all parking areas" located from time to time on the Entire Premises,

including Tract A. [Kace] has attempted to draw a distinction between parking areas established by the owner of Tract A for public parking and other parking areas or facilities not established for public parking. The Declaration draws no such distinction. The Court declines to engage in the mental gymnastics necessary to define the area at issue here [in Tract A] as anything other than a parking area. By the terms of the Declaration, Defendant Hull cannot be excluded from the area.

We affirmed this order in *Kace I*, finding that the injunction was sufficiently specific to be enforced and that Kace's arguments with respect to the USPS's rights were without merit because "a landlord cannot create any greater interest in his lessee than he himself possesses, and the lessee takes subject to all claims of title enforceable against the lessor." (Citation and punctuation omitted.) *Kace I* at 300 (1).

The record supports the superior court's findings that Kace had knowledge of Hull's easement rights in Tract A prior to entering into a lease with the USPS and prior to completing its renovations to the property. Despite this, Kace leased portions of Tract A to the USPS, erected a fence around the property, and, by means of the fence, locks, and "restricted parking" signs, attempted to keep everyone except its tenant out of the fenced area. After the superior court ordered Kace to cease interfering with Hull's easement rights (the August 8, 2002 order was affirmed on September 19, 2003), Kace continued to interfere with those rights in the following ways. Counsel admitted in court on July 19, 2004: "We still have a locked fence." On January 24, 2005, counsel for Kace argued that the locks on the fenced area belonged to the USPS and that Kace could not remove them, implicitly admitting the locked fence was still present. Then, instead of complying with the court's order, Kace attempted to make Hull's easement vanish. Kace took the position both in court and with its tenant that since Kace had "seal coated" the parking lot and removed the stripes from the lot in June 2004, that portion of Tract A was no longer "a parking area under both the zoning ordinance and the declaration. That being the situation, there is no easement from Mr. Hull." However, exhibits introduced into evidence during the contempt hearing revealed that portions of Tract A were still being used by the USPS for parking, that it remained fenced, and that the USPS continued to display restricted parking signs. Pretermitting whether Kace had any right to change that use of Tract A, the property's use and nature plainly remained unchanged. Finally, Kace's claim that it could not comply with the court's order because its lease with the USPS required it to fence off part of Tract A does not prevent it from

being held in contempt. That is because Kace is the one who created the problem by entering into the lease with the USPS when it knew of Hull's easement rights. See *Turner Advertising Co. v. Garcia*, 252 Ga. 101 (311 SE2d 466) (1984). Because the evidence supports the court's finding that Kace wilfully violated the court's injunction, and because Kace has shown no viable defense, we find no abuse of discretion in the superior court's civil contempt order.

3. Suntrust Bank, Augusta, is dismissed from this appeal. The parties, in a consent motion, agreed that "the debt which caused Suntrust to intervene below has been paid."

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 7, 2006 —
RECONSIDERATION DENIED MARCH 27, 2006 — 

*Chilivis, Cochran, Larkins & Bever, John K. Larkins, Jr., Thomas D. Bever, Johnston, Wilkin & Williams, William J. Williams, Fleming, Jackson, Ingram & Floyd, William M. Fleming, William A. Trotter III, Warren D. Evans*, for appellant.

*Tucker, Everitt, Long, Brewton & Lanier, John B. Long, A. Montague Miller, Fulcher & Hagler, Robert C. Hagler, James W. Purcell*, for appellees.