### A11A0839. MOSES et al. v. PENNEBAKER.
(719 SE2d 521)

PHIPPS, Presiding Judge.

This appeal involves claims related to the judicial dissolution of a limited liability company. One of the members of the company appeals from the judgment entered against him and in favor of the company's only other member, citing as error: the court's award of damages based on claims asserted after the court entered judgment on the dissolution petition; the method by which the court calculated the company's value; and the award of attorney fees, punitive damages, and damages for conversion, breach of fiduciary duty and usurpation of corporate opportunities. For the reasons that follow, we affirm the judgment.

The two members of International Merchandise Group, LLC ("IMG") were S. Douglas Moses and Ashley Pennebaker. In April 2002, Pennebaker filed a petition for judicial dissolution and interlocutory injunction, citing OCGA § 14-11-603.[1] In the petition, which named Moses as a defendant and IMG as a nominal defendant, Pennebaker alleged that he and Moses were unable to agree on any material decisions necessary for the operation of IMG and that it was not reasonably practicable for IMG to carry on its business in conformity with its articles of organization. Alleging that Moses had not responded to his attempts to amicably dissolve the company, Pennebaker sought a decree dissolving IMG, terminating the authority of persons to act for IMG (except for certain, specified acts), distributing IMG's net assets to its members, and granting such other relief as the court deemed just and proper. Moses filed an answer in which he, among other things, asserted a counterclaim alleging that Pennebaker was liable for fraud and breach of fiduciary duty. In June 2002, the court entered a consent order directing the parties to select an accounting firm and effectuate an audit of IMG's financial records.

---

[1] OCGA § 14-11-603 (a) pertinently provides for the court to decree dissolution of a limited liability company upon application by a member whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or a written operating agreement.

In April 2003, the court entered a consent order granting a "final judgment on the issue of dissolution." The order provided:

> Pursuant to OCGA § 9-11-54,[2] the Court expressly finds that there is no just reason for delay and expressly directs that the Clerk shall enter this order as a final judgment on the issue of dissolution, but the Court shall retain jurisdiction to enter any ancillary or other equitable relief to effect the winding up and termination of IMG . . . and to effect the other dictates of this Order in any other ways necessary.

In the order, the court dissolved IMG, terminated every person's authority to act for IMG (except regarding certain, specified acts), (re)ordered an audit of IMG's financial records, ordered the parties to cooperate with the auditors, and ordered that certain acts be performed after the audit was conducted. The order did not specifically address Moses's counterclaim.

In November 2003, Pennebaker filed an amendment to the petition for dissolution, adding a claim for wilful conversion of IMG's funds and for attorney fees (pursuant to OCGA § 13-6-11). In the amendment, Pennebaker asserted that Moses had violated the June 2002 and April 2003 court orders by not cooperating in the audit and the winding up of IMG's business, by seizing and using IMG's assets without authority, and by setting up a competing company.

Pennebaker also filed a motion to enforce the court's prior orders and, in May 2004, the court ordered Moses to pay into a trust account (pending the outcome of the case) funds that the court found he had improperly withdrawn in October 2002 from IMG's bank account. In August 2004, the court found Moses in contempt of court for failing to comply with the May 2004 order (though the court denied Pennebaker's demand to have Moses incarcerated based on its finding that Moses's failure to fully pay the ordered sums was not wilful but was due to an inability to pay).

In October 2004, Pennebaker filed a second amendment to his petition, this time asserting, inter alia, claims for breach of fiduciary duty and usurpation of corporate opportunities, and for compensatory and punitive damages. Pennebaker alleged, inter alia, that Moses

has taken control of IMG without authority, managed IMG

---

[2] OCGA § 9-11-54 (b) pertinently provides: "When more than one claim for relief is presented in an action, whether as a claim[ ] [or] counterclaim, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

unilaterally and without authority, set up a company to compete with IMG, cashed an IMG check without proper endorsement, failed to cooperate with regard to the Court-ordered audit, failed to comply with other Court orders and with the Court-ordered judicial dissolution of IMG, and converted and improperly used IMG funds for his own personal use, along with using more than $108,000 of IMG funds to pay his personal legal bills.

In March 2008, finding that Moses had wilfully and intentionally failed to comply with the court's orders entered in May 2002, June 2002, April 2003 and May 2004 (as well as three other orders) regarding, among other things, the audit and various payment requirements, the court entered an order striking Moses's answer and dismissing his counterclaim with prejudice. The court entered final judgment in favor of Pennebaker as to Moses's liability on all of Pennebaker's claims. The court reserved for trial the issue of damages.

In July 2008, a bench trial was held on the issue of damages. In September 2010, the court entered judgment in favor of Pennebaker and against Moses for one-half of the value of IMG, wilful conversion of corporate assets, breach of fiduciary duty and usurpation of corporate opportunities, punitive damages and attorney fees. Moses appeals from the September 2010 judgment.[3]

1. Moses contends that the trial court erred in considering claims that Pennebaker asserted in amendments to his petition because the amendments were filed after the court entered final judgment on Pennebaker's dissolution petition. The court did not err in allowing the amendments.

"A party's right to amend a complaint is very broad."[4] A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order.[5] "While the right to amend is very broad, it may not be exercised after the case has been tried and judgment rendered therein."[6] Accordingly, a party

---

[3] Although the notices of appeal list both Moses and IMG (nominal defendant) as appellants, no appellate brief was filed on behalf of IMG.

[4] *Kace Investments v. Hull*, 278 Ga. App. 477, 481 (1) (a) (629 SE2d 26) (2006) (citation omitted).

[5] OCGA § 9-11-15 (a); see OCGA § 9-11-16, governing pretrial orders; see also *Gaul v. Kennedy*, 246 Ga. 290, 291 (1) (271 SE2d 196) (1980) (a pretrial order, once entered, limits the issues for trial to those not disposed of by admissions and agreement of counsel, and controls the subsequent course of the action, unless modified at trial to prevent manifest injustice).

[6] *Duffy v. Landings Assn.*, 254 Ga. App. 506, 509-510 (2) (563 SE2d 174) (2002) (citations and punctuation omitted); see *Kace Investments*, supra at 482 (1) (a) ("[W]hile under the Code the right to amend is very broad, it may not be exercised after a case has been tried and a

is not entitled to amend his complaint to assert a new cause of action after judgment is entered.[7] But "[a] judgment is not final unless it disposes of the entire controversy, leaving nothing for the trial court to do in the case."[8]

When Pennebaker amended his complaint in November 2003 and October 2004, no pretrial order had been filed; the April 2003 judgment was not intended to be a pretrial order, given that the court ordered the parties in February 2008 to file within a certain time period a consolidated pretrial order. Moreover, the April 2003 judgment did not dispose of the entire controversy. Moses's counterclaim was still pending, inasmuch as the April 2003 order did not address it. Finally, the April 2003 order granting judgment on the dissolution claim expressly provided that the court "retain[ed] jurisdiction to enter any ancillary or other equitable relief to effect the winding up and termination of IMG . . . and to effect the other dictates of this Order in any other ways necessary."

Pennebaker was authorized to amend his pleadings when he did because the court had not entered a pretrial order[9] and had not entirely disposed of the claims asserted in the case.[10] This was not a case in which the litigation had ended and the case was "finished."[11] The trial court has wide discretion to allow an amendment and, unless there is a manifest abuse of that discretion, this court declines to interfere.[12] Moses has shown no abuse of discretion.[13]

2. Moses contends that the court erred in calculating damages as to Count 1 (dissolution of the corporation) because (a) it should have based the valuation on the date of judicial dissolution; and (b) Pennebaker did not prove that he was entitled to $450,939.23 as his

---

judgment rendered therein which has not been set aside or vacated.") (punctuation omitted).

[7] See *Duffy*, supra at 510 (2).

[8] *Griffin v. Rutland*, 259 Ga. App. 846, 847 (2) (578 SE2d 540) (2003) (no final judgment where default judgment on issue of liability had not disposed of entire controversy).

[9] OCGA § 9-11-15 (b).

[10] See *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 235 (1) (659 SE2d 668) (2008) (a court order was not a final order disposing of the case where, by its own terms, it provided that the case would remain active and no dismissal would occur until all financial issues had been resolved).

[11] See *Kace Investments*, supra.

[12] Id. at 481 (1) (a).

[13] See OCGA § 9-11-15 (a); *Internal Medicine Alliance*, supra; *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 909 (1) (600 SE2d 841) (2004) (plaintiff was authorized to amend his complaint to add a negligence claim before court's order granting summary judgment to defendant on breach of contract and fraud claims was filed in clerk's office and before a pretrial order was entered or trial commenced); *Edwards v. Davis*, 160 Ga. App. 122 (1) (286 SE2d 301) (1981) (plaintiff was authorized to amend his complaint to raise a new theory of recovery — even after trial court had granted summary judgment to defendant on all counts of plaintiff's complaint — because defendant's counterclaim was still pending and no pretrial order had been entered).

share of IMG's capital account.

(a) In its findings of fact, the court stated that one of the primary reasons for the company's "breakup" was Moses's failure in April 2000 to repay a loan to Pennebaker, and that in January 2002, Pennebaker notified Moses that he wished to end the business and divide IMG's assets. The court calculated IMG's value using 2001 figures based upon its finding that Pennebaker had ceased participating in the operation of IMG in about January 2002. An expert witness testified that he reviewed IMG's tax returns for the years 1999 through 2001 (which his firm had prepared) and its general ledgers for 2002.

Moses asserts that the court should have instead determined Pennebaker's interest based on IMG's value as of April 23, 2003, when the court entered the order dissolving IMG. However, Moses has not cited, and we have not found, any authority for his position that the value of Pennebaker's interest must be determined as of the date the court dissolves the company. Further, Moses has pointed to no evidence of a specific valuation of IMG as of the date of judicial dissolution, or for any time after 2002. The issue of damages is a matter for the factfinder that generally should not be disturbed on appeal.[14] As such, the trial court's award of damages will be upheld so long as it is within the range of testimony presented at trial.[15]

Where a trial court found that a shareholder had been deprived of his interest in the corporation, the court held that the valuation of the corporation and the shareholder's interest were determined based on when the shareholder was deprived of his ownership interest.[16] This court has also affirmed an award of damages in which members of a limited liability company agreed that the company's valuation was determined based on when one member ceased working and the other member began operating the business on her own.[17]

The undisputed evidence establishes that as of 2002 it was not possible to carry on IMG's business. For instance, in January 2002, Pennebaker had notified Moses of his intent to terminate their

[14] See *Lou Robustelli Marketing Svcs. v. Robustelli*, 286 Ga. App. 816, 820-821 (4) (650 SE2d 326) (2007).

[15] *Wachovia Bank of Ga. v. Namik*, 275 Ga. App. 229, 231 (1), n. 3 (620 SE2d 470) (2005).

[16] *Monterrey Mexican Restaurant of Wise &c. v. Leon*, 282 Ga. App. 439, 449-450 (5) (c) (638 SE2d 879) (2006) (in determining value of associate's interest in corporation, court should have used value as of date he was deprived of his ownership interest; that date was when bookkeepers changed corporate records to show associate owned no shares).

[17] See *Internal Medicine Alliance*, supra at 233-234, 236 (2) (in member's action to recover the value of his ownership interest in limited liability company, court applied December 2005 valuation — when member last worked and the other member thereafter became sole member "running" company).

business relationship and dissolve the company; Moses had verbally agreed in July 2002 to buy Pennebaker's interest in the company; and in October 2002 Moses unilaterally withdrew from IMG's bank account $714,578, without authorization, which he deposited into his accounts "and did various things, . . . [including] buy a house," leaving only "30 or $40,000" in IMG's account. Further, in April 2002, Pennebaker filed the petition to judicially dissolve the company because IMG could not carry on its business, Pennebaker and Moses were unable to agree on material decisions necessary for IMG's operation, and IMG could not be effectively managed by its members; these allegations were undisputed in light of the court's striking of Moses's answer.[18]

The court was authorized to find that Pennebaker was deprived of his ownership interest in or ceased participating in IMG beginning in early 2002 — long before the April 2003 judicial dissolution. An accounting expert, whose firm had prepared tax returns and performed the bookkeeping work for IMG from 1999 through 2001, reviewed IMG's financial records from 1999 through 2002. The witness testified as to IMG's value as of December 31, 2001 ($7,524,416.48) and the value of Pennebaker's 50 percent interest in IMG based on the 2001 valuation; he also testified regarding IMG's (higher) value as of December 31, 2002 ($7,832,410). The witness explained that he used the 2001 valuation amount (versus the amounts shown for the other years reviewed) because that was the last year his firm had prepared IMG's financial records and the profits for 2001 were "more consistent with what you would expect." The witness was not provided with and thus did not review any records for periods after 2002.

"[T]he superior court's award of damages will be upheld so long as it is within the range of testimony presented at trial."[19] Further, factual findings made at a bench trial should only be set aside where they are clearly erroneous, and the trial court's findings of fact should be upheld if there is any evidence to sustain them.[20] The trial court's finding that Pennebaker was deprived of his ownership interest in early 2002 was not clearly erroneous. And the award of damages was within the range of testimony. Moses has not demonstrated any basis for reversal.

---

[18] *Fowler v. Atlanta Napp Deady, Inc.*, 283 Ga. App. 331, 336 (2) (641 SE2d 573) (2007) (a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged; the default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery); see OCGA § 9-11-55 (a).

[19] *Internal Medicine Alliance*, supra at 236 (2).

[20] *Monterrey Mexican Restaurant of Wise*, supra at 442.

(b) The expert witness who audited IMG's financial records testified that Pennebaker was owed $450,939.23 from Moses for Pennebaker's interest in IMG's capital account. Moses asserts that Pennebaker failed to explain how or prove that the money was used for IMG business. But Pennebaker testified that the funds were used to pay a manufacturer "that did work for us," for "products," though he stated on cross-examination that he had no documentation to support this testimony. The issue of damages was a matter for the factfinder, and the court's award of damages ($450,939.23) in connection with the capital account was within the range of testimony.[21] The trial court's factual findings after a bench trial are not to be "set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[22] "The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them."[23]

3. Moses contends that the court erred in awarding damages for conversion when no claim for conversion existed. Specifically, he asserts that (a) Pennebaker was not authorized to amend the complaint to add a claim for conversion after the court had entered final judgment on his claims; (b) the court's award on the conversion claim exceeded Pennebaker's demand, as he sought in his amended complaint recovery of only IMG's funds, but the court also awarded damages for the conversion of Pennebaker's funds; and (c) Pennebaker could not recover for conversion because he did not have title to IMG's funds when Moses took them in October 2002 (IMG had title).

(a) Pennebaker's amendment was authorized because there was no judgment terminating all issues and claims in the case and no pretrial order had been entered.[24]

(b) Pennebaker sought damages for wilful conversion, alleging in his amended complaint that Moses converted "more than $700,000 of IMG funds to his own use without authority, and us[ed] IMG funds without authority to pay [attorneys] to represent him personally." Pennebaker demanded "that the Court compel Defendant Moses to account for and reimburse Plaintiff Pennebaker all funds that he has improperly taken from IMG, enter Judgment in favor of Plaintiff Pennebaker against Defendant Moses, and award Plaintiff Pennebaker compensatory and punitive damages in an amount that the

---

[21] See *Internal Medicine Alliance*, supra.

[22] OCGA § 9-11-52 (a).

[23] *Monterrey Mexican Restaurant of Wise*, supra (citation omitted).

[24] See Division 1.

law and facts support."

The court awarded Pennebaker the following amounts on the conversion claim: $5,000 (for the June 10, 2003 conversion of settlement checks made payable to IMG and another party); $159,000 (for a personal loan from Pennebaker); $357,000 (for the October 11, 2002 conversion of IMG's capital account funds); and interest. As the court noted in the judgment, Moses (through counsel) conceded at trial that Pennebaker was entitled to receive damages in those amounts; Moses does not dispute on appeal this statement by the court, except to assert that his concession regarding the loan was subject to the subject matter jurisdiction argument (discussed and found to be meritless in Division 1). Given Moses's express concession at trial that he was liable to Pennebaker in the amounts later awarded by the court (with the only challenge being to Pennebaker's entitlement to amend the complaint after entry of the April 2003 judgment), Moses's argument on appeal that the court erred in awarding these same amounts is unavailing.[25]

Moreover, in his claim for conversion, Pennebaker specifically realleged every allegation contained in paragraphs 1 through 12; he had alleged in paragraph 8 that Moses failed to repay him a personal loan of $159,000. Pennebaker also requested in the complaint as amended an award of damages in an amount that the law and facts supported. In this case, the law and facts supported the court's award of damages for conversion. Further, by his default, Moses admitted that he was liable to Pennebaker for improperly withdrawing and using IMG funds and failing to repay Pennebaker a personal loan of $159,000.[26] Moses has not shown that the court granted relief other than what he conceded he was authorized, or granted relief greater than what was sought in the complaint. Nor has he shown that he was harmed by the court's awarding the damages as conversion versus other damages (given his admissions by default and at trial).[27]

(c) The argument that Pennebaker could not assert a conversion claim when the funds belonged to IMG was foreclosed by the May

---

[25] See generally *Plaza Properties v. Prime Business Investments*, 273 Ga. 97, 100 (538 SE2d 51) (2000) (a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same).

[26] See *Universal Underwriters Ins. Co. v. Albert*, 248 Ga. App. 415, 416 (1) (546 SE2d 361) (2001) (averments in a complaint, other than those as to the amount of damage, are admitted when not denied in the answer).

[27] See generally *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993) (appellant must show harm as well as error to prevail on appeal; judgment affirmed where court failed to follow certain procedure in awarding damages, because the court's only deviation was the failure to recite in the default judgment "what was evident from the complaint, i.e., that an award of punitive damages should be made," and where appellant had contributed to the error by acquiescing and failing to dispute plaintiff's entitlement to damages as prayed for).

2002 stipulation entered into by Pennebaker and Moses in which they agreed that each party was

> authorized to assert any claims, defenses, or counter-claims . . . which would otherwise be brought by or in the name of International Merchandise Group, LLC and that neither Pennebaker nor Moses shall object to such claim, defense, or counterclaim on the grounds that the party asserting such is not the proper party to assert such claim, defense, or counterclaim.

4. Moses contends that the court erred in awarding damages to Pennebaker on the claim for breach of fiduciary duty. According to Moses, (a) Pennebaker was not authorized to amend the complaint to add the claim because final judgment had already been entered; and (b) there was no evidence of damages due to any such breach.

(a) As discussed in Division 1, the amendment was authorized.

(b) A claim for breach of fiduciary duty exists where: a fiduciary duty exists; that duty has been breached; and damages were proximately caused by the breach.[28]

Pennebaker alleged that Moses breached his fiduciary duty by, among other things, taking control of IMG and managing it unilaterally without authority, and setting up a competing company. The court awarded Pennebaker a total of $1.00 for Counts 5 and 6, breach of fiduciary duty and usurpation of corporate opportunities, finding that Moses took control of IMG without authority, managed IMG unilaterally and without authority, and (in August 2002) set up a company to compete with IMG, which competing company he operated out of IMG's office using IMG's equipment and employees. Although Moses testified that he never conducted any business or sold any products through the new company, he also testified that he "ran both the companies out of" the same office, using IMG equipment, staff, and checks. The court's award of nominal damages as flowing from Moses's breach of fiduciary duty was supported by the evidence.[29]

5. Moses contends that the court erred in awarding damages to Pennebaker for usurpation of corporate opportunities because (a) the amendment was made after final judgment was entered; and (b) actions seeking to recover for usurpation of corporate opportunities

---

[28] *Perry Golf Course Dev. v. Housing Auth. of Atlanta*, 294 Ga. App. 387, 393 (6) (c) (670 SE2d 171) (2008).

[29] Compare *Conner v. Hart*, 252 Ga. App. 92, 94 (1) (a) (555 SE2d 783) (2001) (regarding breach of fiduciary duty claim, noting that nominal damages may be awarded to compensate for a small injury).

belong to the corporation, not to individual shareholders.

(a) The amendment was authorized as discussed in Division 1.

(b) The argument that this cause of action belonged to the corporation rather than to an individual shareholder was foreclosed by the stipulation entered into by Pennebaker and Moses in which they agreed that each party was authorized to assert any claims, defenses, or counterclaims which would otherwise be brought by or in the name of IMG, and that neither Pennebaker nor Moses could object to such claim, defense, or counterclaim on the grounds that the party asserting such was not the proper party to assert such claim, defense, or counterclaim. Further, with respect to a two-member limited liability company, one member may in certain circumstances bring a direct action for usurpation of corporate opportunities.[30]

6. Moses contends that the court erred in awarding attorney fees to Pennebaker because claims for attorney fees are ancillary to the main claims and cannot be awarded where, as here, there was not subject matter jurisdiction over the main claims.

As shown in Division 1, the trial court did not lack subject matter jurisdiction over Pennebaker's claims. And Pennebaker succeeded on his main claims by virtue of the court's striking of Moses's answer, which established Moses's liability on those claims, and by the entry of judgment for damages after the bench trial. The court awarded attorney fees pursuant to OCGA § 13-6-11 after finding that Moses had acted in bad faith, was stubbornly litigious, and had caused Pennebaker unnecessary trouble and expense. Because there was evidence to support the court's finding that an award of attorney fees was warranted, the award is upheld.[31]

7. Moses contends that the court erred in awarding punitive damages because Pennebaker failed to establish that he was entitled to recover compensatory damages on his substantive claims.[32] As discussed above, however, Pennebaker was entitled to recover compensatory damages based on Moses's default and the evidence presented at trial.[33] The court specifically found that Moses's conduct

---

[30] See *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 822 (3) (615 SE2d 1) (2005), reversed on other grounds, 280 Ga. 635 (631 SE2d 693) (2006).

[31] See *Hope Electric Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 304 (3) (601 SE2d 723) (2004) (an appellate court will uphold an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support the award).

[32] See *J. Kinson Cook of Ga. v. Heery/Mitchell*, 284 Ga. App. 552, 560-561 (g) (644 SE2d 440) (2007) (punitive damages may not be recovered where there is no entitlement to compensatory damages).

[33] See *Bunch v. Byington*, 292 Ga. App. 497, 504 (664 SE2d 842) (2008) (breach of fiduciary duty claim supported an award of punitive damages); *COMCAST v. Warren*, 286 Ga. App. 835, 838-842 (650 SE2d 307) (2007) (plaintiff's complaint may in certain circumstances

evidenced a specific intent to cause harm.

> Because there was clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, the evidence was sufficient to support the award of punitive damages under OCGA § 51-12-5.1.[34]

A finding of conduct supporting an award for punitive damages will be "affirmed if there is any evidence to support it."[35]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

## DECIDED NOVEMBER 16, 2011.

*Stephen M. Katz*, for appellants.
*Alston & Bird, Jay D. Bennett, Nowell D. Berreth, Daniel C. Norris*, for appellee.

---

establish entitlement to punitive damages in a default case); *Lawrence v. Direct Mortgage Lenders*, 254 Ga. App. 672, 674-675 (3) (563 SE2d 533) (2002) (punitive damage award was proper in conversion case).

[34] *Lawrence*, supra at 675 (3) (punctuation omitted).

[35] *Bunch*, supra at 505.